**DAYTON–HUDSON CORPORATION, a corporation, Plaintiff,**

v.

**AMERICAN MUTUAL LIABILITY INSURANCE COMPANY, a corporation, Defendant.**

**No. Civ–78–0102–D.**

United States District Court,
W. D. Oklahoma.

June 5, 1981.

Claim for Attorney Fees July 8, 1981.

See also 621 P.2d 1155.

William D. Curlee, Oklahoma City, Okl., for plaintiff.

Gene H. Hemry, Oklahoma City, Okl., for defendant.

## MEMORANDUM OPINION

DAUGHERTY, Chief Judge.

This is an action by Plaintiff arising from Defendant's refusal to pay a judgment against Plaintiff for punitive damages pursuant to a personal liability policy issued to Plaintiff by Defendant. The Court finds and concludes that this Court has subject matter jurisdiction over the instant action by reason of diversity of citizenship and amount in controversy pursuant to 28 U.S.C. § 1332.

This case came on for nonjury trial on October 2, 1979, wherein the Court granted leave to the parties to file separate Motions for Summary Judgment. Subsequently, on January 9, 1980, the Court abated the respective Motions for Summary Judgment and certified to the Oklahoma Supreme Court, pursuant to the Uniform Certification of Questions of Law Act, 20 Okla.Stat. Supp.1980 § 1601 et seq., the following questions of law:

1.  [Does] . . . the personal injury liability insurance policy between Plaintiff and Defendant include[s] coverage for punitive damages?

2.  If said policy includes coverage for punitive damages, would such coverage contravene the public policy of the State of Oklahoma?

3.  If the public policy of Oklahoma prohibits insurance coverage for punitive damages, is there an exception to such policy when the wrongdoer is the agent, servant and employee of the insured or the insured's liability is otherwise vicarious?

4.  If the above exception is present in Oklahoma law, would it be subject to being defeated upon a determination that the insured had prior knowledge of a propensity of the agent, servant or employee involved to commit the wrong involved?

The Supreme Court of Oklahoma answered said questions of law as follows:

We hold (a) the insured policy in suit includes coverage for punitive damages; (b) public policy is generally contravened by coverage of punitive damages; (c) an exception to public policy exists when the insured's liability is imposed vicariously and (d) prior knowledge of an agent's propensity to commit the wrong for which punitive damages were imposed will not bar recovery against the insurer unless the insured may be said to have been guilty of "gross negligence" in not discharging the "vicious" servant.

*Dayton Hudson Corp. v. American Mutual Liability Insurance Co.*, 621 P.2d 1155 at 1156 (Okla. 1980).

The Supreme Court then remanded the instant case to this Court. Then remaining in the case was the fact issue of whether the Plaintiff as to this cause of action was guilty of reckless disregard of the safety of others in keeping the employee accused of wrongdoing in the Dorothy Moore case (Moore case) [1] wherein punitive damages were awarded against Plaintiff which gave rise to the instant action.

In this connection, the Court held a hearing on May 29, 1981, at which the parties made an agreed disposition of their respective Motions for Summary Judgment based upon the answers of the Oklahoma Supreme Court. Accordingly, based upon the agree-

---

1.  Dorothy Moore was the plaintiff in the action wherein the punitive damages for false arrest were awarded against Dayton-Hudson and Jim Lanigan which gave rise to the instant lawsuit.

ment of the parties and the decision of the Oklahoma Supreme Court, the Court rules as follows on the respective Motions for Summary Judgment:

■ 1. Plaintiff's Motion for Summary Judgment is granted on the propositions that the policy in question includes coverage for punitive damages and that although coverage for punitive damages is void on public policy grounds, there is an exception for coverage when a party is merely vicariously liable. Plaintiff's Motion is overruled as to its proposition that coverage of punitive damages by a policy of insurance is not generally void as against public policy.

2. Defendant's Motion for Summary Judgment is granted on the proposition that coverage for punitive damages is generally void as being against public policy and overruled as to the remaining issues.

■ In view of the foregoing disposition, the only remaining issue to be decided by the Court at this time in the instant case is the question of whether Plaintiff was grossly negligent in hiring and/or retaining Jim Lanigan in connection with merchandise loss control. Both parties presented evidence and arguments on this point at the May 29, 1981, hearing. This matter is now ready for decision, but the Court reserves for later determination the issues of attorney's fees asserted by the parties at said hearing.

Defendant assumed the burden to establish gross negligence on the part of Plaintiff in hiring and/or retaining Jim Lanigan. In this regard Defendant presented five certified copies of petitions filed in state court, prior to the Moore case which resulted in the punitive damages award in question, in which Jim Lanigan was a party defendant with Plaintiff. These actions were based on alleged false arrests. These five actions arose out of three separate incidents and Plaintiff admits that it was aware of these pending lawsuits at the time of the Moore incident. James Medeiros, an employee of Defendant, testified that Jim Lanigan was involved in said three incidents which gave rise to said five lawsuits for false arrest prior to the Moore incident. Mr. Medeiros also testified that Jim Lanigan had made hundreds of arrests for shoplifting prior to the Moore incident and that only three such prior incidents resulted in false arrest lawsuits.

Plaintiff presented the testimony of Ronald Montague, the director of loss prevention for Plaintiff's subsidiary, who stated that he was pleased with the job Jim Lanigan was doing and did not consider the number of false arrest complaints filed excessive in view of the large number of shoplifting arrests made by Jim Lanigan. Mr. Montague further testified that the services of Jim Lanigan's security service were terminated in 1974 only because the Plaintiff had decided to eliminate the use of contract services in store security. Mr. Montague emphasized that Plaintiff was in no way displeased with the quality of security provided by Jim Lanigan and his employees.

In view of the evidence presented, it does not appear that Plaintiff was in any way "grossly negligent" in hiring or continuing to employ Jim Lanigan for security services. Jim Lanigan was not shown to be "vicious" in the performance of his job of providing security for Plaintiff. To the contrary, in view of the number of shoplifting arrests testified to by both sides, it appears that only a very small number of such arrests, three, resulted in false arrest suits being filed. Though it is true Plaintiff had knowledge of the petitions filed against Jim Lanigan, this is not sufficient to establish gross negligence equivalent to a positive wrongdoing. It is well known to this Court that parties to a lawsuit are at liberty to allege most anything. What the Court looks to, however, is the proof that such acts occurred or did not occur. Mere allegations in a lawsuit without knowing the outcome of such litigation would not put Plaintiff on notice of any "vicious" acts of Jim Lanigan and in view of the ultimate outcome of the five cases [2] put into evidence

---

**2.** Two of the lawsuits against Jim Lanigan resulted at the trial court level in directed verdicts for Jim Lanigan and were later settled, after the appellate court remanded them, for

by Defendant, it does not appear that Jim Lanigan was "vicious" in the performance of his job.

In view of the foregoing, the Court finds and concludes that Plaintiff was not guilty of gross negligence in hiring and/or retaining a "vicious" employee within the meaning of the Oklahoma Supreme Court's opinion in *Dayton Hudson Corp. v. American Mutual Liability Insurance Co., supra.* Accordingly, judgment should be entered in favor of Plaintiff and against Defendant on the issue of Defendant's liability for the $35,000.00 in punitive damages awarded against Plaintiff in the Moore case giving rise to the instant action. Accordingly, the instant case should be set for a hearing on the remaining attorney's fee issues on the 30th day of June, 1981 at 9:30 A.M.[3] The Court will reserve entry of final judgment herein until the attorney's fees issues have been resolved.

### On Claim For Attorney's Fees

After the Oklahoma Supreme Court answered certain questions submitted to it pursuant to 20 Okla.Stat. §§ 1601–1613, it became clear that Plaintiff was entitled to coverage under Defendant's insurance policy issued to Plaintiff for the punitive damages award made against Plaintiff in the State court case of *Moore v. Target Stores, Inc.*[1] (hereafter called *Moore*) unless Plaintiff was guilty of gross negligence in either hiring or retaining Jim Lanigan in Plain-

tiff's employ. *See Dayton Hudson Corp. v. American Mutual Liability Ins. Co.,* 621 P.2d 1155 (Okla.1980). Defendant claimed that Plaintiff was guilty of such gross negligence. Accordingly, the Court set this issue for an evidentiary hearing and following the same determined that Plaintiff was not guilty of the requisite gross negligence and so held in an Order filed herein on June 5, 1981.

Plaintiff has made claim herein that it is entitled to recover from Defendant attorney's fees expended in this case under 36 Okla.Stat. § 3629 B[2] and also attorney fees expended on appeal in the *Moore* case under the provisions of the insurance policy involved herein.[3]

After briefs were filed herein on Plaintiff's claims for attorney fees, each of which claims Defendant opposes, an evidentiary hearing with arguments has been conducted on such issues and the same are now ready for decision by the Court.

### PLAINTIFF'S CLAIM FOR ATTORNEY FEES HEREIN

Plaintiff's claim for attorney fees herein is based solely on statute. The statute is 36 Okla.Stat. § 3629 B set out in Note 2, *supra.* For this statute to permit recovery of attorney fees herein three essentials must be established as follows:

1. Plaintiff made a proof of loss to Defendant under an insurance policy.

---

nominal amounts for their nuisance value. Two other lawsuits were settled for nominal amounts on their nuisance value alone. One lawsuit resulted in a directed verdict for Jim Lanigan.

3. The parties are directed to file trial briefs on the attorney fee issues not later than five (5) days before said hearing.

1. Plaintiff and Target Stores, Inc. (Target) will be used interchangeably herein as they are one and the same for the purpose of this litigation.

2. This statute provides as follows:
"B. It shall be the duty of the insurer, receiving a proof of loss, to submit a written offer of settlement or rejection of the claim to the insured within ninety (90) days of receipt of that proof of loss. Upon a judgment rendered to either party, costs and attorney fees shall be allowable to the prevailing party.

For purposes of this section, the prevailing party is the insurer in those cases where judgment does not exceed written offer of settlement. In all other judgments the insured shall be the prevailing party. This provision shall not apply to uninsured motorist coverage."

3. The insurance policy provision relied upon provides in part as follows:
"The company will pay, in addition to the applicable limit of liability:

\* \* \* \* \* \*

(d) *reasonable expenses incurred by the insured at the company's request in assisting the company in the investigation or defense of any claim or suit,* including actual loss of earnings not to exceed $25.00 per day." (Emphasis added)

2. Defendant did not thereafter submit a written offer of settlement or rejection to the claim within ninety (90) days of receipt.

3. Plaintiff is the prevailing party herein within the meaning of said statute.

The Court finds and concludes that Plaintiff has met its burden in this regard and is entitled to recover reasonable attorney fees herein from Defendant. The Court finds that the letter of Plaintiff to Defendant dated November 17, 1977, constitutes a proof of loss (within the meaning of said statute) and demand for payment under the insurance policy between the parties for the $35,000.00 punitive damage award made against Plaintiff in the *Moore* case.[4] It is not disputed that Defendant received said proof of loss and within ninety (90) days of receipt made no written offer of settlement or rejection of the claim for said punitive damage award. Also, Plaintiff is clearly the prevailing party herein for it has been determined that Plaintiff is entitled to recover from the Defendant the amount representing said punitive damage award. Hence, Plaintiff is entitled to recover reasonable attorney fees herein.

After hearing evidence on the matter of reasonable attorney fees herein and upon considering the relevant factors in this regard as set out in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (Fifth Cir. 1974), the Court finds reasonable attorney fees herein to be in the amount of $25,000.00. In this connection, this litigation was quite novel, it presented difficult issues on which there was no legal precedent in Oklahoma, it required skilled counsel to which group Plaintiff's attorney clearly belongs, Plaintiff's counsel obtained the desired result herein. Furthermore, the question of law involved herein and the result of the litigation was of great importance to Target and that importance transcended the instant litigation. Target by virtue of its business is constantly potentially exposed to actual and punitive damages for

false arrest of suspected shoplifters. It is noted that the fee arrangement between Plaintiff and Plaintiff's counsel was not on a contingent basis. Plaintiff's counsel spent approximately 222 hours (plus a small amount of intern assistance) on this case and his rates of $100.00 to $130.00 per hour during the period of this litigation are reasonable in this community for an attorney with the skill and experience of Plaintiff's counsel. Accordingly, attorney fee for Plaintiff is fixed herein at $25,000.00.

## PLAINTIFF'S CLAIM FOR ATTORNEY FEES IN THE MOORE CASE

Plaintiff's claim for attorney fees for work performed in the *Moore* case is based on a provision contained in the insurance contract between the parties. Such provision relied on by the Plaintiff is set out in pertinent part in Note 3, *supra*. For this provision to permit recovery of reasonable attorney fees by Plaintiff three essentials must be established as follows:

1. Plaintiff incurred legal expense in the *Moore* case.

2. At Defendant's request.

3. In assisting Defendant in the investigation or defense of the *Moore* claims.

It is not disputed that Plaintiff paid its attorneys the sum of $8,799.92 in legal fees and related expenses for work performed in the *Moore* case at the appellate level. Such work appeared to have been expended in defense of the *Moore* claims but a more difficult question is presented as to whether this work was done at the request of the Defendant.

The evidence reveals that at the trial level Defendant represented only the Plaintiff and not its agent, Jim Lanigan, a co-Defendant. It appears that Lanigan was represented by his own counsel. The evidentiary record is silent as to the details of or reasons behind this legal representation.

---

4. Defendant's claim in its Brief that the effective date of 36 Okla.Stat. § 3629 B was October 1, 1977, and said statute does not apply herein because the verdict against Plaintiff for punitive damages in the *Moore* case was returned in May of 1975 is without merit. The event bringing this statute into play is the receipt of a proof of loss by an insurer which in this case occurred on November 17, 1977, which is after the effective date of the statute.

It is clear that at the trial level the Defendant was denying responsibility for any award of punitive damages which might be rendered in the case against anyone. After the jury trial which resulted in a $50,000.00 verdict against Plaintiff and its agent Lanigan, $15,000.00 of which was for actual damages and $35,000.00 of which was for punitive damages, the two Defendants in the *Moore* case and Plaintiff's carrier were faced with the ramifications of an appeal and legal representation therein.

On May 20, 1975, the Defendant wrote the Plaintiff as follows:

AMERICAN MUTUAL INSURANCE
COMPANIES

315 Kimberly Building
2510 South Brentwood
Boulevard
St. Louis, Missouri
63144

May 20, 1975

Mr. William E. Harder
Corporate Attorney
Dayton Hudson Corporation
777 Nicollet Mall
Minneapolis, Minnesota 55402

    Re:  Dorothy Moore
    Vs:  Target Stores
    Acc:  11/1/73
    File:  557–276716

Dear Mr. Harder:

As a follow up on our letter of April 25, 1975, this matter proceeded to trial as scheduled and resulted in a plaintiffs' verdict against Lanigan and Target for $15,000 actual and $35,000 punitive damages, there being no coverage for the latter under our policy.

I attach a copy of Gene Hemry's letter of May 12, 1975, and ask that you contact him directly regarding arrangements for Supersedeas Bond for the punitive aspect of the verdict, a responsibility of your Company.

You are again invited to participate in the further handling of this matter.

Yours very truly,
W. O. HOEFLE
District Claim Manager

WOH/vh

The evidence further reveals that Plaintiff engaged counsel to represent Lanigan on appeal. The Defendant represented only the Plaintiff on appeal as was the situation at the trial level.

Under the foregoing circumstances the Court finds and concludes that the above letter from Defendant to Plaintiff dated May 20, 1975, constituted a request by Defendant of Plaintiff to assist the Defendant in the defense of the *Moore* suit. A failure of Lanigan to appeal would have a detrimental effect on all involved.

Hence, it appears and the Court finds and concludes that Plaintiff has met its burden in connection with this request for the appellate legal expense in the *Moore* case in that Plaintiff did incur legal expense in the *Moore* case, did so at Defendant's invitation and request and that Plaintiff did assist the Defendant in the defense of the *Moore* claim at the appellate level in the representation afforded co-defendant Lanigan, Target's agent.

As to the reasonableness of expenses incurred by Plaintiff in assisting the Defendant in the defense of the *Moore* suit on appeal, the parties have stipulated that the sum of $8,799.92, amounting to a legal charge of $8,070.00 and expenses related thereto in the amount of $729.92, was reasonable expense incurred by Plaintiff as aforesaid. Hence, it was not necessary for the Court to conduct an evidentiary hearing on the matter of the reasonableness of such expenses as the Court adopts the stipulation of the parties in this regard. Accordingly, Plaintiff is entitled to recover from Defendant herein the sum of $8,799.92 for Plaintiff's reasonable expenses incurred in the defense of the *Moore* suit.

In the Court's Memorandum Opinion of June 5, 1981, the Court neglected to allow for interest on the punitive damage award of $35,000.00 which Plaintiff has previously paid and which may have subsequently accrued. This omission was discussed at the

time of the evidentiary hearing resulting in Memorandum Opinion now being issued and the parties are in agreement that the final judgment to be entered herein should include such item or items of interest on said punitive damage award payment made by Plaintiff. It is believed that the parties are in agreement on the amount of said interest.

Plaintiff is directed to prepare a final judgment herein covering all facets of this litigation as previously determined by the Court, submit the same to defense counsel for approval as to form and then to the Court for signature and entry herein. Fifteen (15) days are allowed for this purpose.