**FORD MOTOR COMPANY, a corporation, Plaintiff,**

v.

**KUAN TONG INDUSTRIAL CO., LTD., a corporation; Powering Imports, Inc., a corporation; C & H Imports, Inc., a corporation; Simon Huang, an individual; Everen Industrial Company, a corporation; and Chiao Y. Huang, an individual, Defendants.**

Civ. A. No. C–86–20775 SW.

United States District Court,
N.D. California.

Dec. 14, 1987.

David C. Hilliard, Charles R. Mandly, Thomas P. Arden, Pattishall, McAuliffe & Hofstetter, Chicago, Ill., Harlan M. Richter, Neil D. Greenstein, Pillsbury, Madison & Sutro, San Francisco, Cal., for plaintiff.

Michael A. Dillon, Dunaway, Schachter & Lo, Mountain View, Cal., for defendants Powering Imports, Inc., C&H Imports, Inc., Simon Huang and Chiao Y. Huang.

## MEMORANDUM OPINION AND ORDER

SPENCER WILLIAMS, District Judge.

This matter was heard on November 24, 1987, on plaintiff's motion for summary judgment regarding the determination of the amount of treble damages, prejudgment interest, attorneys' fees and costs awarded by this Court.

Plaintiff, Ford Motor Company ("Ford"), filed this action on October 30, 1986, for trademark infringement and counterfeiting, dilution, unfair competition and racketeering and corrupt practices. Relevant facts of this case are set forth in this Court's Memorandum Opinion regarding sanctions for contempt against defendants, reported at 3 U.S.P.Q.2d 1061.

On July 22, 1987, after a hearing on Ford's motion for summary judgment and default, the Court found defendants Powering Imports, Inc., C & H Imports, Inc., and Simon Huang liable for trademark counterfeiting and infringement, unfair competition and dilution. The court permanently enjoined these defendants and held them jointly and severally liable to Ford for treble damages, attorneys fees, and costs, the amount of which is the subject of the current order. Judgment by default and a permanent injunction were entered against defendants Kuan Tong Industrial Co. and Everen Industrial Co. on August 12, 1987. The Court also held these defendants jointly and severally liable with the other de-

fendants for Ford's award of treble damages, attorneys fees and costs. The court did not find defendant Chiao Y. Huang liable.

■ Where, as here, a party knowingly sells goods bearing counterfeit copies of the plaintiff's trademarks, there is a presumption that the commercial success of the infringing party's goods is directly attributable to the counterfeit trademarks, and, therefore, a sale made by the infringing party is presumed to be a sale lost to the trademark owner. *See Mishawaka Rubber & Woolen Mfg. Co. v. S.S. Kresge Co.*, 316 U.S. 203, 207, 62 S.Ct. 1022, 1025, 86 L.Ed. 1381 (1942); *Ford Motor Company v. B & H Supply, Inc.*, 646 F.Supp. 975, 992 (D.Minn.1986). Profits lost by Ford have been measured by its Product Line Profitability Analysis, an internal study conducted to determine the profitability of Ford's automotive accessories. This measure is an appropriate method for determining the amount of actual damages suffered by Ford due to lost sales resulting from defendants' use of counterfeit Ford trademarks on automotive accessories. *See Ford Motor Company v. B & H Supply, Inc.*, 646 F.Supp. 975, 991–992 & n. 24 (D.Minn.1986), *citing Ford Motor Company v. Auto Supply Co., Inc.*, 661 F.2d 1171 (8th Cir.1981).

■ Defendants' sales of automotive accessories bearing Ford trademarks, evidenced by invoices seized by the United States Marshal and invoices produced by defendants, totalled 26,206. Based upon Ford's Profit Line Profitability Analysis, Ford would have made $840,732.96 on the number of sales made by defendants. In accordance with 15 U.S.C. § 1117(b), Ford is therefore entitled to treble damages in the amount of $2,522,198.88.

Ford has expended $157,639.28 in attorneys' fees and investigators' charges in this case. Ford's lead counsel in this action was Pattishall, McAuliffe & Hofstetter, which has represented Ford in numerous actions throughout the country involving trademark counterfeiting and related causes of action. Ford has paid or is obligated to pay $106,245.84 in attorneys fees

and costs incurred by Pattishall, McAuliffe & Hofstetter. Ford's local counsel in this matter was Pillsbury, Madison & Sutro. Ford has paid or is obligated to pay $40,-276.20 for legal services and related costs billed by Pillsbury, Madison & Sutro. Ford, through Pattishall, McAuliffe & Hofstetter, also employed Baley, O'Connel & Associates, an Illinois private investigation agency, to investigate defendants' counterfeiting activities and to move, store and analyze materials seized from defendants' offices. Ford has paid $29,982.56 for these services and costs.

In determining the reasonableness of the amount of Ford's requested attorneys' fees, the following guidelines are applicable:

> (1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal services properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the "undesirability" of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases.

*Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir.1975), *cert. denied* 425 U.S. 951, 96 S.Ct. 1726, 48 L.Ed.2d 195 (1976). *Accord, Rivera v. City of Riverside*, 679 F.2d 795, 796–97 & n. 4 (9th Cir.1982), *vacated and remanded on other grounds*, 461 U.S. 952, 103 S.Ct. 2421, 77 L.Ed.2d 1310 (1983); *Rogerson Aircraft Corp. v. Fairchild Industries*, 632 F.Supp. 1494, 1508 (C.D.Cal.1986). In evaluating requested attorneys' fees, all twelve *Kerr* factors need not be considered; it is sufficient only to consider those factors "called into question by the case at hand and necessary to support the reasonableness of the fee award." *Rivera v. City of Riverside*, 679 F.2d 795, 796–97 (9th Cir.1982), *vacated and remanded on other grounds*, 461 U.S.

952, 103 S.Ct. 2421, 77 L.Ed.2d 1310 (1983), *quoting, Kessler v. Associates Financial Services Company of Hawaii, Inc.,* 639 F.2d 498, 500 (9th Cir.1981).

Regarding the skill, experience, and professional relationship to Ford of Ford's attorneys, the attorneys retained by Ford have great expertise and experience in complex commercial litigation, particularly in intellectual property law. *Clairol Inc. v. Save–Way Industries, Inc.,* 211 U.S.P.Q. 223, 225 (S.D.Fla.1980). Largely because of the substantial experience and relationship with Ford of Ford's counsel in similar counterfeiting cases, Ford has been able successfully to bring this suit to judgment within a relatively short period of time. *Southern Bell Tel & Tel. v. Associated Tel. Directory,* 221 U.S.P.Q. 132, 137 (N.D.Ga. 1982) [available on WESTLAW, 1982 WL 131]. Regarding time limitations, Ford moved for a temporary restraining order and order to permit seizure almost immediately after discovering defendants' counterfeiting activities. Ford also had to file a motion for preliminary injunction in the beginning weeks of the case.

Regarding results obtained, Ford has fully prevailed in this case by obtaining a permanent injunction and a finding of liability for its total requested relief, including treble damages and attorneys' fees, against all but one defendant. The only claim not granted in Ford's favor was its RICO cause of action. This claim was voluntarily dropped at the hearing on summary judgment, since the results obtained by Ford are as fully remedial as that which could have been awarded under RICO. The RICO claim, moreover, was based upon the same counterfeiting activities as were the other claims on which judgment was entered. *Rivera v. City of Riverside,* 679 F.2d 795, 797 (9th Cir.1982), *vacated and remanded on other grounds,* 461 U.S. 952, 103 S.Ct. 2421, 77 L.Ed.2d 1310 (1983), *further proceeding at* 763 F.2d 1580 (9th Cir. 1985); *Pate v. Alameda–Contra Transit District,* 697 F.2d 870, 872 (9th Cir.1983); *Thornberry v. Delta Air Lines, Inc.,* 676 F.2d 1240, 1243–1244 (9th Cir.1982); *Jordan v. Multnomah County,* 694 F.2d 1156, 1158 (9th Cir.1982); *Moore v. Jas. H. Mat-* *thews & Co.,* 682 F.2d 830, 839 (9th Cir. 1982).

The actual billable rates charged by Ford's counsel are therefore adopted as the appropriate measure for the legal services performed by the respective attorneys. *See Keith v. Volpe,* 501 F.Supp. 403, 412–13 (C.D.Cal.1980); *Dayton–Hudson Corp. v. American Mutual Liability Insurance Co.,* 526 F.Supp. 730, 734 (W.D.Okla.1981).

The award of attorneys' fees under 15 U.S.C. § 1117(b) includes fees charged by investigators acting "under the direction of an attorney." 130 Cong.Rec. H12076–H12083, *reprinted in* 4 Gilson, Trademark Protection and Practice 34–630 (1986). The amount charged Ford by Baley, O'Connell & Associates is therefore included as part of the attorneys fees to which Ford is entitled.

The travel costs incurred to attend court hearings are appropriate, particularly since Ford's principal counsel has such great familiarity with the issues presented herein due to its representation of Ford in multiple counterfeiting actions across the United States. *Playboy Enterprises v. P.K. Sorren Export Co., Inc. of Fla.,* 221 U.S.P.Q. 124, 125 (S.D.Fla.1983). *Cf. Landsberg v. Scrabble Crossword Game Players, Inc.,* 212 U.S.P.Q. 159, 164 (C.D.Cal.1980), *vacated and remanded on other grounds,* 221 U.S.P.Q. 1140, 736 F.2d 485 (9th Cir.1984). The other out-of-pocket expenses requested by Ford, including telephone, mailing and duplicating expenses and the cost of computerized legal research services are also appropriate. *Metro Data Systems, Inc. v. Durango Systems, Inc.,* 597 F.Supp. 244, 247 (D.Az.1984).

In accordance with 15 U.S.C. 1117(b), the Court awards pre-judgment interest from November 3, 1986, the date of service of this action, to November 24, 1987, in the amount of $270,754.70. This amounts represents 9% interest from November 3, 1986, to September 30, 1987 and 10% interest from October 1, 1987, to November 24, 1987 compounded daily on the award of $2,694,703.40, in accordance with Internal Revenue Code Section 5621(a)(2).

WHEREFORE, it is hereby ORDERED that defendants pay plaintiff trebled damages in the amount of $2,522,198.88; prejudgment interest provided by 15 U.S.C. § 1117(b) in the amount of $270,754.70; costs in the amount of $18,865.29; and attorneys' fees in the amount of $153,-639.31.