**Ronald SMITH, Plaintiff–Appellant,**

v.

**Jessie FREEMAN, Police Officer, Defendant–Appellee.**

No. 90–1193.

United States Court of Appeals, Tenth Circuit.

Dec. 27, 1990.

Before ANDERSON, BALDOCK and EBEL, Circuit Judges.

STEPHEN H. ANDERSON, Circuit Judge.

This appeal is before the court solely on the matter of attorney's fees. We remand on one issue and affirm the remainder.[1]

The underlying civil rights action, brought pursuant to 42 U.S.C. § 1983, arose out of an incident in which Ronald Smith allegedly cut himself while cleaning a goose and then went to the local fire department in search of a bandage. When the firemen insisted that he go to a hospital, Smith resisted and was eventually arrested by a City of Fountain policeman, Jessie Freeman, for threatening violence. Smith was treated at the hospital against his will and taken to the county jail, where he was held overnight. Thereafter, the criminal charges against him were dismissed. Smith then sued Jessie Freeman, among others, in state court for civil rights violations and for a number of state law claims. Subsequently, the suit was removed to federal court. On January 3, 1990, a settlement of $2,500, including damages and costs, was reached by Smith and Freeman.

The parties agreed to submit the fee claims of Smith's attorneys, brought pursuant to 42 U.S.C. § 1988, to the district court. After settlement negotiations with a magistrate failed, the parties briefed the issues and, on June 5, 1990, the court awarded $8,139 to Craig Cornish, Smith's primary attorney in the civil rights action, and $2,311.65 to another attorney with lesser involvement in the case.

The attorney's fee award is appealed only as to Cornish. Cornish argues that the district court abused its discretion in three ways. First, it awarded him only 25% of his standard hourly rate for driving time from Colorado Springs to Denver for court appearances. Second, it refused to

Craig M. Cornish, Cornish and Dell'Olio, Colorado Springs, Colo., for plaintiff-appellant.

Theodore S. Halaby and James B. Buck, Halaby & McCrea, Denver, Colo., and William A. Palmer, City Atty., Fountain, Colo., for defendant-appellee.

1. After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed.R. App.P. 34(a); 10th Cir.R. 34.1.9. The cause is therefore ordered submitted without oral argument.

increase his lodestar hourly rate by $25.00 an hour to compensate for both the contingent nature of payment in the case and the delay of payment. Finally, the court reduced the number of hours Cornish spent on preparation of the attorney's fee motion and ignored hours he expended on the reply brief.

■■■ At the outset, we note that "[t]he establishment of hourly rates in awarding attorneys' fees is within the discretion of the trial judge who is familiar with the case and the prevailing rates in the area." *Lucero v. City of Trinidad*, 815 F.2d 1384, 1385 (10th Cir.1987) (quoting *Gurule v. Wilson*, 635 F.2d 782, 794 (10th Cir.1980)). The burden is on the fee applicant to establish the reasonableness of the attorney fee award under § 1988. *Lucero v. City of Trinidad*, 815 F.2d at 1385. And the district court must "provide a concise but clear explanation of its reasons for the fee award." *Hensley v. Eckerhart*, 461 U.S. 424, 437, 103 S.Ct. 1933, 1941, 76 L.Ed.2d 40 (1983); *Ramos v. Lamm*, 713 F.2d 546, 552 (10th Cir.1983). In our role as a court of review, we will overturn the district court award "only if it represents an abuse of discretion." *Mares v. Credit Bur. of Raton*, 801 F.2d 1197, 1201 (10th Cir.1986).

■■■ Cornish first asserts that the district court abused its discretion by failing to award him his full hourly rate for the nine hours of driving time he expended traveling between Colorado Springs and Denver for court appearances. The issue of appropriate compensation for an attorney's non-productive driving time has not been specifically addressed by this court before.

Cornish argues that customary practice is to charge the full hourly rate for driving time and that the court ignored uncontroverted evidence in the record to that effect. He urges us to adopt the standard employed by this court in *Bee v. Greaves*, 910 F.2d 686 (10th Cir.1990), a case addressing the award of travel *costs* to an attorney traveling to and from court appearances. In *Bee*, we adopted a two-part inquiry. First, are the travel costs normally billed to a private client in the locality and, second,

is the amount reasonable? *Bee v. Greaves*, 910 F.2d at 690.

As to the first part of the inquiry, we agree with Cornish that "customary practice" in the locale is one factor that the trial court should consider in its determination. It is not, however, the only factor. *See Ramos v. Lamm*, 713 F.2d at 555. A district judge, for example, may also "turn to her own knowledge" to supplement the evidence. *Bee v. Greaves*, 910 F.2d at 689 n. 4. Once the court has examined the factors, it then determines whether the amount is reasonable. *Id.* at 690. The court must engage in both inquiries because such factors as "customary practice" are not always "reasonable."

One important part of determining the reasonableness of an attorney's fee is assessing the attorney's "billing judgment." Practicing attorneys know that not all time expended on a case is actually billed to the client. Thus, hours that are "excessive, redundant, or otherwise unnecessary" should not be compensated. *Hensley v. Eckerhart*, 461 U.S. at 434, 103 S.Ct. at 1940. Similarly, "no compensation is due for nonproductive time." *Copeland v. Marshall*, 641 F.2d 880, 891 (D.C.Cir.1980). Under this analysis, we see no abuse of discretion in the trial court's determination that an attorney's driving time, while necessary, is essentially unproductive and, therefore, compensable at a reduced hourly rate.

■■ Cornish next contends that the district court abused its discretion by failing to increase his lodestar rate from $150 to $175 an hour as compensation for delay in payment and for risk of nonpayment. As a general comment, we observe that $150 is a more than generous hourly fee. Nonetheless, to account for delay in payment, an "appropriate adjustment ... is within the contemplation" of section 1988. *Missouri v. Jenkins*, 491 U.S. 274, 109 S.Ct. 2463, 2469, 105 L.Ed.2d 229 (1989). Plainly, expenses of doing business continue during litigation and delayed payment may work a hardship on the attorney who is not compensated regularly for work completed. *Pennsylvania v. Del. Valley Citizens'*

*Council for Clean Air*, 483 U.S. 711, 716, 107 S.Ct. 3078, 3082, 97 L.Ed.2d 585 (1987) (*"Delaware II"*). Similarly, "compensation received years after the services were rendered ... is not equivalent to the same dollar amount received reasonably promptly as the legal services are performed...." *Missouri v. Jenkins*, 109 S.Ct. at 2469. To deny an attorney compensation for delay in payment in cases where the time involved in conscientious representation has been great and the litigation has been protracted would plainly run contrary to the purposes underlying the civil rights statute.

The case before us, however, does not present such a scenario. Indeed, Cornish's argument, that even a minimal delay requires some enhancement, would inevitably result in litigating appropriate compensation for delay in payment in every case taken on contingency, since payment in all such cases is necessarily "delayed" until the merits are adjudicated. In the case before us, only six months elapsed between Cornish's entrance into the case and settlement of the merits, with another eight months spent in unsuccessful attorney's fee negotiations, ultimately resulting in the district court's adjudication of the matter. No evidence was presented indicating any increase in Cornish's standard hourly rate over the fourteen months, nor was any other evidence put forth that would lead us to conclude that the district court acted improperly in denying Cornish an increase in the lodestar as compensation for delay in payment.

As to added compensation for the risk of nonpayment, we are faced with a similar problem. Every attorney who agrees to take a case on contingency necessarily assumes the risk of losing the case and, consequently, of not receiving payment. "Because it is difficult ever to be completely sure that a case will be won, enhancing fees for the assumption of the risk of nonpayment would justify some degree of enhancement in almost every case." *Delaware II*, 483 U.S. at 725, 107 S.Ct. at 3086. We are loath to establish a rule that would inevitably result in attorney's fee litigation in all contingency fee cases. We agree with the *Delaware II* plurality that "en-hancement for the risk of nonpayment should be reserved for exceptional cases where the need and justification for such enhancement are readily apparent and are supported by evidence in the record and specific findings by the courts." *Id.* at 729, 107 S.Ct. at 3088 (citing *Blum v. Stenson*, 465 U.S. 886, 898–901, 104 S.Ct. 1541, 1548–50, 79 L.Ed.2d 891 (1984)). In this case, neither the need nor justification for enhancement is at all apparent, and Cornish has failed to provide any evidentiary basis to compel a conclusion other than the one reached by the district court. We find no abuse of discretion in its denial of an increase in the lodestar for risk of nonpayment.

■ Cornish next argues that the trial court erred by reducing from 10.77 to 5.39 the number of hours he expended on the attorney's fee motion and by ignoring the eleven hours he spent preparing the trial court reply brief. In essence, he asserts that the court second-guessed his own careful record-keeping, substituting its own judgment for the facts and supporting its decision with an improper rationale.

We have dealt with this issue before: No objective standard exists to resolve a dispute, for example, over ten hours logged for drafting interrogatories. A lawyer may insist the time was necessary, while a court, based upon experience and judgment, including knowledge of the case itself, may declare half the time to have been necessary.

.    .    .    .    .

The process would descend to a contest between court and counsel.... [D]isputes would be multiplied, violating the Supreme Court's caution that a "request for attorney's fees should not result in a second major litigation." *Hensley*, 461 U.S. at 437, 103 S.Ct. at 1941.

*Mares v. Credit Bur. of Raton*, 801 F.2d at 1202–03.

In order to avoid just this sort of nonproductive "contest," we have determined that "[a] general reduction of hours claimed in order to achieve what the court determines to be a reasonable number is not an errone-

ous method, so long as there is sufficient reason for its use." *Id.* at 1203. However, "[i]t remains important ... for the district court to provide a concise but clear explanation of its reasons for the fee award." *Hensley v. Eckerhart,* 461 U.S. at 437, 103 S.Ct. at 1941.

In this case, the court reasoned that the 10.77 hours of work could have been completed in half the time claimed because neither the factual nor legal issues were especially complex and because, based on the many months of settlement negotiations that had preceded the court's adjudication of the issue, Cornish was thoroughly familiar with the issues. Keeping in mind that the question is not whether we would have awarded more hours, but whether the district court abused its discretion, we conclude that the court's reasoning was sufficient to support its judgment.

As to the eleven hours claimed for work on the reply brief, we can find no evidence that the district court considered this claim at all. In its Order of June 5, 1990, the court seems only to address the fee claims presented in the First Amended Motion for Attorney Fees, dated April 23, 1990. No mention is made of the additional fee request presented in the reply brief, dated May 10, 1990. Because the court offered no rationale for excluding this claim, we can only conclude that it was inadvertently overlooked. We therefore remand to the district court for determination of the fee award for time expended on the trial level reply brief.

AFFIRMED in part; REMANDED in part. The mandate shall issue forthwith.