Patricia BATY, Plaintiff,

v.

WILLIAMETTE INDUSTRIES, INC., Defendant.

No. 96–2181–JWL.

United States District Court, D. Kansas.

Nov. 10, 1997.

Steven M. Sprenger, Sprenger Law Firm, Kansas City, MO, Craig M. Leff, Kansas City, MO, for Plaintiff.

Rody P. Biggert, Andrew M. Altschul, Seyfarth, Shaw, Fairweather & Geraldson, Chicago, IL, Scott A. McCreight, McCreight & Lassiter, L.C., Kansas City, MO, John M. McFarland, Rosalee M. McNamara, Charles J. Williams, Michael J. Abrams, Lathrop & Gage L.C., Kansas City, MO, for Willamette Industries, Inc.

### MEMORANDUM AND ORDER

LUNGSTRUM, District Judge.

In this action, plaintiff sued defendant, her former employer, alleging hostile work environment sexual harassment and retaliatory discharge under Title VII of the federal Civil Rights Act. After a trial in June of 1997, a jury found for plaintiff on both counts. With respect to the sexual harassment claim, the jury awarded $120,000 in compensatory damages and $500,000 in punitive damages. With respect to the retaliation claim, the jury awarded $25,000 in compensatory damages and $500,000 in punitive damages. In ruling on defendant's post-trial motion, the court upheld the verdicts and the damage awards, but reduced the award on both claims for compensatory and punitive damages to a total of $300,000, in accordance with the statutory cap on such damages. *Baty v. Willamette Indus., Inc.,* 985 F.Supp. 987 (D.Kan. 1997). The court also awarded plaintiff back pay in the amount of $38,063 and front pay in the amount of $22,420, and entered judgment against defendant in the total amount of $360,483. *Id.*

The matter is presently before the court on plaintiff's motion for statutory attorney fees pursuant to Title VII's fee provision, 42 U.S.C. § 2000e–5(k) (Doc. 122). For the reasons set forth below, the court grants the motion in part and awards plaintiff $128,-812.92 in attorney fees and expenses.

### I. Attorney Fees

A prevailing plaintiff in a Title VII case "ordinarily should be awarded attorney's fees in all but special circumstances." *Christiansburg Garment Co. v. Equal Employment Opportunity Comm'n,* 434 U.S. 412, 417, 98 S.Ct. 694, 698, 54 L.Ed.2d 648 (1978); *accord Metz v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 39 F.3d 1482, 1492 (10th Cir.1994). Plaintiff was clearly the prevailing party in this case and is therefore entitled to an award of statutory attorney fees.

The amount of the award is committed to the district court's discretion. *Carter v. Sedgwick County, Kan.,* 36 F.3d 952, 956 (10th Cir.1994). The presumptively reasonable amount of fees is calculated by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate, yielding a "lodestar" figure. *Blum v. Stenson,* 465 U.S. 886, 888, 104 S.Ct. 1541, 1543–44, 79 L.Ed.2d 891 (1984); *Hensley v. Eckerhart,* 461 U.S. 424, 433, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983).

### A. Reasonable Hourly Rate

A reasonable hourly rate comports with "those prevailing in the community for similar services by lawyers of reasonably competent skill, experience, and reputation." *Blum*, 465 U.S. at 896 n. 11, 104 S.Ct. at 1547 n. 11. In setting an hourly rate, a court should establish, from information provided to it and from its own analysis of the level of performance, a rate based on the norm for comparable attorneys in private firms. *Ramos v. Lamm*, 713 F.2d 546, 555 (10th Cir. 1983). "A district judge may turn to [his or] her own knowledge of prevailing market rates as well as other indicia of a reasonable market rate." *Metz*, 39 F.3d at 1493. The relevant community is the place of trial. *Ramos*, 713 F.2d at 555.

This court has addressed this issue previously in the last two years. *See Medlock v. Ortho Biotech Inc.*, 1997 WL 51216 (D.Kan. Jan.14, 1997); *Eichenwald v. Krigel's Inc.*, 1996 WL 157223 (D.Kan. Mar.14, 1996); *Dutton v. Johnson County Bd. of County Comm'rs.*, 1995 WL 337588 (D.Kan. May 26, 1995). In *Dutton*, the court awarded fees based on a top rate of $135 per hour. *Dutton*, 1995 WL 337588, at *2. In *Eichenwald*, the court deemed reasonable rates of $135 per hour for lead counsel, $85 per hour for associates, and $50 per hour for legal assistants. *Eichenwald*, 1996 WL 157223, at *2. In *Medlock*, the court concluded that the same general rate structure remained reasonable and awarded fees at rates of $135 per hour for lead counsel and $50 per hour for legal assistants. *Medlock*, 1997 WL 51216, at *1. In *Medlock*, the court also awarded fees at a rate of $100 per hour for a second attorney from a different law firm. *Id.* at *2.

Defendant contends that the court should follow *Medlock* here and charge fees at rates of $135 per hour for lead counsel, Steven Sprenger, and $100 for plaintiff's second-chair counsel, Craig Leff. Plaintiff argues that *Medlock* is inapposite because that case involved different, less efficient counsel. In *Medlock*, however, the court did not comment on the lead attorney's particular skill or experience, but rather determined that $135 per hour remained a reasonable rate for competent counsel for cases of this type in the market generally. *Id.* at *1. Plaintiff also argues that *Medlock* is not instructive because it involved attorneys from Topeka; the court made clear in that case, however, that it applied market rates for Kansas City, the place of trial. *Id.*

Plaintiff has also provided a number of affidavits from local attorneys who generally support plaintiff's contention that her proposed rate of $165 per hour for Mr. Sprenger represents the current market rate for counsel of similar experience. The court concedes that the $135 rate that the court has applied since 1995 is now too low, but it does not agree that a rate of $165 per hour would be appropriate. Accordingly, the court concludes that a rate of $145 per hour is reasonable in this case, and the court will apply that rate to the hours expended by Mr. Sprenger.

The court agrees that plaintiff's use of a second-chair, associate-level attorney was reasonable in this case. Plaintiff offers no evidence or argument in support of her proposed rate of $125 per hour for Mr. Leff, however. The court has last applied a rate of $85 per hour for associates in cases of this type. *See Eichenwald*, 1996 WL 157223, at *2; *cf. Medlock*, 1997 WL 51216, at *2 ($100 rate used for second attorney who was a partner at different law firm). The court concludes that this rate too should be adjusted upwards, and the court accepts defendant's proposed rate of $100 per hour as reasonable for Mr. Leff's time in this case.

Defendant does not object to plaintiff's proposed rates of $75 per hour for attorney Brian Weiler and $45 per hour for paralegal Michelle McCaslin. The court will therefore use those rates to calculate the lodestar.

Defendant does object to plaintiff's proposed rate of $195 per hour for Stephen McAllister, a professor at the University of Kansas School of Law. The court agrees that plaintiff should not be awarded fees at that rate for Prof. McAllister's time. The court recognizes Prof. McAllister as an excellent attorney and academician. Plaintiff has not shown, however, that the use of such a high-priced specialist was reasonably necessary for the prosecution of this action. Accord-

ingly, the court will apply a rate of $145 per hour to Prof. McAllister's hours.[1]

### B. Reasonable Number of Hours Expended

 The court may, in its discretion, reduce the compensable hours to arrive at a reasonable number. *Carter*, 36 F.3d at 956. The burden is on the prevailing party to show that the claimed hours are reasonable. *Blum*, 465 U.S. at 897, 104 S.Ct. at 1548.

 The only specific objection raised by defendant with respect to the number of hours for which plaintiff seeks attorney fees concerns the 31 hours expended by Prof. McAllister. The court overrules this objection. The court concludes that the hours spent by Prof. McAllister on the First Amendment and statutory cap issues were reasonably expended and are sufficiently documented in the billing records provided by plaintiff.

### C. Calculation of the Lodestar

The court thus concludes that a lodestar figure for this case of $117,876 may be calculated as follows: TABLE

| | | | |
|---|---|---|---|
| Steven Sprenger | 648.2 hrs. × $145/hr. = | $ | 93,989 |
| Stephen McAllister | 31.0 hrs. × $145/hr. = | $ | 4,495 |
| Craig Leff | 166.8 hrs. × $100/hr. = | $ | 16,680 |
| Brian Weiler | 31.6 hrs. × $ 75/hr. = | $ | 2,370 |
| Michelle McCaslin | 7.6 hrs. × $ 45/hr. = | $ | 342 |
| TOTAL | | | $117,876 |

### D. Reduction of the Lodestar

 Plaintiff submitted all hours spent by her attorneys working on all claims except those hours expended exclusively on her unsuccessful state law claims. Defendant contends that the lodestar figure should be further reduced to account for plaintiff's lack of success with respect to those state law claims, her quid pro quo harassment claim, her non-discharge-related retaliation claims, her assertion of a continuing violation, and the issue of the application of the statutory cap on damages.

The Supreme Court discussed this issue at length in *Hensley*. The Court stated that, if a plaintiff has succeeded on only some of her claims for relief, the "results obtained" for the plaintiff is a particularly crucial factor. *Id.* In such event, two questions must be addressed:

> First, did the plaintiff fail to prevail on claims that were unrelated to the claims on which [she] succeeded? Second, did the plaintiff achieve a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award?

*Id.* Fees may not be awarded for work on unsuccessful claims that represent distinctly different claims for relief that are based on different facts and legal theories than the successful claim. *Id.* at 434–35, 103 S.Ct. at 1939–40. If the unsuccessful claims involve a common core of facts or related legal theories, however, it is difficult to divide the work on a claim-by-claim basis, and the court must focus on "the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation." *Id.* at 434, 103 S.Ct. at 1939–40. The Court continued:

> Where a plaintiff has obtained excellent results, [her] attorney should recover a fully compensatory fee. Normally this will encompass all hours reasonably expended on the litigation, and indeed in some cases of exceptional success an enhanced award may be justified. In these circumstances the fee award should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit. Litigants in good faith may raise alternative legal grounds for a desired outcome, and the court's rejection of or failure to reach certain grounds is not a sufficient reason for reducing a fee. The result is what matters.

*Id.* (citation and footnote omitted). In the event of partial or limited success, the lodestar figure may need to be reduced, but "the most critical factor [remains] the degree of success obtained." *Id.* at 436, 103 S.Ct. at 1941. There is no precise formula for making these determinations, and the court should not use a mathematical approach involving the number of claims; "[t]he court

---

**1.** This court has previously noted that use of the term of "reasonable" with respect to fee awards is somewhat misleading to the extent that such use implies that other rates actually charged to clients are somehow unreasonable or unfair. *See Medlock*, 1997 WL 51216, at *2 n. 3.

necessarily has discretion in making this equitable determination." *Id.* at 436 n. 11, 436–37, 103 S.Ct. at 1941 n. 11.

In this case, the results obtained were excellent, and plaintiff was granted substantial relief; given the statutory cap, a larger award of compensatory and punitive damages was not possible. Moreover, plaintiff's claims were either legally related or based on a common core of facts. Accordingly, the court concludes that a reduction of the lodestar would not permit plaintiff a fully compensatory fee and therefore is not appropriate here under the standards set forth by the Supreme Court in *Hensley*.

### E. Enhancement of the Lodestar

■ Plaintiff argues that the lodestar figure should be enhanced by a significant amount because of the quality of representation afforded plaintiff and the results obtained. The Supreme Court discussed lodestar enhancements in *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air (Delaware Valley I)*, 478 U.S. 546, 106 S.Ct. 3088, 92 L.Ed.2d 439 (1986), in which the Court reviewed its prior pronouncements on the issue. For instance, in *Hensley*, in which the Court adopted the lodestar approach, the Court noted that "other considerations ... may lead the district court to adjust the fee upward or downward" from the lodestar. *Id.* at 564, 106 S.Ct. at 3097–98 (quoting *Hensley*, 461 U.S. at 434, 103 S.Ct. at 1939–40). The *Hensley* Court pointed in particular to the factors set out in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974), although the Court stated that "many of these factors usually are subsumed within the initial calculation of [the lodestar]." *Delaware Valley I*, 478 U.S. at 564, 106 S.Ct. at 3097–98 (quoting *Hensley*, 461 U.S. at 434 n. 9, 103 S.Ct. at 1939–40 n. 9).

The Court in *Delaware Valley I* also reviewed its decision in *Blum*, in which the Court stated that the lodestar is presumed to constitute the reasonable fee. *Id.* at 564, 106 S.Ct. at 3097–98 (citing *Blum*, 465 U.S. at 897, 104 S.Ct. at 1548). The Court further explained *Blum* as follows:

*Blum* also limited the factors which a district court may consider in determining whether to make adjustments to the lodestar amount. Expanding on our earlier finding in *Hensley* that many of the *Johnson* factors "are subsumed within the initial calculation" of the lodestar, we specifically held in *Blum* that the "novelty [and] complexity of the issues," "the special skill and experience of counsel," the "quality of representation," and the "results obtained" from the litigation are presumably fully reflected in the lodestar amount, and thus cannot serve as independent bases for increasing the basic fee award. Although upward adjustments of the lodestar figure are still permissible, such modifications are proper only in certain "rare" and "exceptional" cases, supported by both "specific evidence" on the record and detailed findings by the lower court.

*Id.* at 564–65, 106 S.Ct. at 3097–98 (citing *Blum*, 465 U.S. at 898–901, 104 S.Ct. at 1548–50) (citations omitted).

After reviewing *Hensley* and *Blum*, the Supreme Court stated that the "strong presumption that the lodestar figure ... represents a 'reasonable' fee" is "wholly consistent" with the fee-shifting statutes' purpose of enabling private parties to obtain legal help in seeking redress for injuries resulting from violations of federal laws. *Id.* at 565, 106 S.Ct. at 3097–98. The Court concluded:

Moreover, when an attorney first accepts a case and agrees to represent the client, he obligates himself to perform to the best of his ability and to produce the best possible results commensurate with his skill and his client's interests. Calculating the fee award in a manner that accounts for these factors, either in determining the reasonable number of hours expended on the litigation or in setting the reasonable hourly rate, thus adequately compensates the attorney, and leaves very little room for enhancing the award based on his post-engagement performance. In short, the lodestar figure includes most, if not all, of the relevant factors constituting a "reasonable" attorney's fee, and it is unnecessary to enhance the fee for superior performance in order to serve the statu-

tory purpose of enabling plaintiffs to secure legal assistance.

*Id.* at 565–66, 106 S.Ct. at 3097–98.

It is clear from *Delaware Valley I* that the lodestar amount should be enhanced for the reasons urged by plaintiff only in the most rare and exceptional circumstances. The court concludes that no such circumstances are present here. The court believes that the skill and experience of plaintiff's attorneys are adequately reflected in hourly rates applied by the court in determining the lodestar figure for this case. In addition, plaintiff's claims did not involve particularly complex or novel issues. This was a "garden-variety" sexual harassment and retaliation case. The large numbers scribed by the jury on the verdict form do not transform the case into a rare or exceptional one for purposes of fee enhancement; the statutory purpose of allowing a fully compensatory fee in order to assure adequate legal assistance is satisfied here by a fee award equal to the lodestar figure.

The court also rejects plaintiff's suggestion that an enhancement is appropriate here because of a real risk of not prevailing. Such an enhancement is appropriate only in "exceptional cases" in which prior to litigation counsel was confronted with a "real risk of not prevailing." *Homeward Bound, Inc. v. Hissom Memorial Center*, 963 F.2d 1352, 1360 (10th Cir.1992) (citing *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air (Delaware Valley II )*, 483 U.S. 711, 729–30, 107 S.Ct. 3078, 3088–89, 97 L.Ed.2d 585 (1987)). To determine whether such a risk existed, the court must consider the law and facts available to the attorney at the time the suit was filed. *Id.* "[T]he burden of proving a real risk of not prevailing is on the party seeking the enhancement to the lodestar." *Id.* (citing *Blum*, 465 U.S. at 898, 104 S.Ct. at 1548–49). The enhancement requires a second showing as well:

> Once a real risk of not prevailing has been demonstrated, the party seeking to enhance the lodestar must also come forward with evidence that, absent an en-

hancement, "the plaintiff would have faced difficulties in finding counsel in the local or other relevant market." This may be shown by evidence that the plaintiff encountered actual difficulty in securing counsel ... or ... by showing that lawyers in the relevant market[ ] generally will not take cases on contingency absent some guarantee of an enhancement.

*Id.* (quoting *Delaware Valley II*, 483 U.S. at 731, 107 S.Ct. at 3089–90) (citations omitted).

Again, the court does not believe that this was an "exceptional" case entitling plaintiff to an enhancement of the lodestar. Plaintiff has not shown that, at the time her case was filed, the law was unsettled, or that the available facts suggested that the chances of recovery were slim. Plaintiff has not met her burden of showing that the chance of not prevailing was greater here than in the average contingent-fee Title VII case. Nor has plaintiff provided any evidence that she would have had trouble finding counsel absent an enhancement.[2] Accordingly, the court will not enhance the lodestar on this basis.

### F. Summary

In summary, the court concludes that neither a reduction nor an enhancement of the lodestar amount is warranted in this case. Plaintiff is therefore awarded $117,876 in attorney fees.

## II. Expense

 Plaintiff also seeks to recover $10,-936.92 in expenses. The prevailing party is entitled to recover in its fee award "[i]tems that are normally itemized and billed" to the client in addition to the hourly rate, as long as such expenses are reasonable. *Bee v. Greaves*, 910 F.2d 686, 690 (10th Cir.1990).

 Defendant's only objection relates to the fee of $2,375 paid to plaintiff's economic expert, Dr. Gerald Olson. The court overrules this objection. The court did criticize aspects of Dr. Olson's testimony in its prior order. Nevertheless, Dr. Olson's testimony

---

**2.** In this regard, the court notes that the lodestar figure is approximately one-third of plaintiff's recovery.

was extremely valuable to plaintiff's claim for back and front pay. Specifically, the court notes that it made only a minor adjustment to Dr. Olson's expert opinion in awarding back pay, and it used Dr. Olson's basic approach and computations in determining front pay. *See Baty,* 985 F.Supp. at 999–1001. Defendant has not cited any authority suggesting that Dr. Olson's fees are not compensable. Therefore, the court awards plaintiff the full amount of $10,936.92 for expenses.

**IT IS THEREFORE ORDERED BY THE COURT THAT** plaintiff's motion for statutory attorney fees and expenses is granted in part, and plaintiff is awarded $128,812.92 in fees and expenses from defendant.

**IT IS SO ORDERED.**