**METRO DATA SYSTEMS, INC., an Arizona corporation, Plaintiff,**

v.

**DURANGO SYSTEMS, INC., a foreign corporation, Defendant.**

**DURANGO SYSTEMS, INC., a California corporation, Counterclaimant,**

v.

**METRO DATA SYSTEMS, INC., an Arizona corporation, Counterdefendant.**

**No. CIV 83–398 PHX CLH.**

United States District Court, D. Arizona.

Nov. 5, 1984.

Donald W. Powell, Claudia J. Kroman, Phoenix, Ariz., for plaintiff.

Deana S. Peck, E. Jeffrey Walsh, Phoenix, Ariz., Denis R. Salmon, Patricia M. Lucas, San Francisco, Cal., for defendant.

MEMORANDUM OPINION
AND ORDER

HARDY, District Judge.

Defendant, the prevailing party in this removal action, has applied for an award of attorneys' fees in the amount of $53,878.90 and for expenses totaling $2,142.36. An award is appropriate, but the amount requested is unreasonable. $38,000 will be awarded.

In fixing the amount to be awarded, the Court has followed the guidelines set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir.1974) and adopted by the Ninth Circuit in *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 69–70 (9th Cir.1975), *cert. denied*, 425 U.S. 951 (1976), to the extent that the guidelines are applicable. It has also relied on the guidance provided by *Hensley v. Eckerhart*, 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983). See also *Schweiger v. China Doll Restaurant, Inc.* 138 Ariz. 183, 673 P.2d 927 (Ct.App.1983).

■ A party seeking an award of attorney's fees has the burden of establishing "by clear and convincing evidence the time and effort claimed and [showing] that the time expended was necessary to achieve the results obtained." *See Hensley*, 103 S.Ct. at 1943 (Burger, C.J., concurring).

■ "The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Id.* at 1939. "[T]he party who seeks payment must keep records in sufficient detail that a neutral judge can make a fair evaluation of the time expended, the nature and need for the service, and the reasonable fees to be allowed." *Id.* at p. 1943 (Burger, C.J., concurring).

In *Georgia Highway Express* the Fifth Circuit stated the approach to be taken by a trial judge in fixing attorney's fees:

"The trial judge should weigh the hours claimed against his own knowledge, experience, and expertise of the time required to complete similar activities. If more than one attorney is involved, the possibility of duplication of effort along with the proper utilization of time should be scrutinized .... It is appropriate to distinguish between legal work, in the strict sense, and investigation, clerical work, compilation of facts and statistics and other work which can often be accomplished by non-lawyers but which a lawyer may do because he has no other help available. Such non-legal work may command a lesser rate. Its dollar value is not enhanced just because a lawyer does it. *Johnson v. Georgia Highway Express, Inc.*" (488 F.2d at p. 717)

Defendant deployed a little army of thirteen lawyers (five in San Francisco, eight in Phoenix), three paralegals and one law clerk to defend against plaintiff's claims and to counterattack by counterclaiming. Through July 2, 1984, they logged a total of 626.50 hours. The application for attorneys' fees is supported by an "itemized schedule and description" of services performed in behalf of the defendant, which are taken from the time records of the two law firms.

It is frequently difficult to determine how much time was spent on any one task because many of the time records combine distinct activities. For example there is an entry for June 27, 1983, in which 1.7 hours is logged for "telephone conference ... re: Answer and Counterclaim; finalize Answer and Counterclaim; correspondence ... re: finalize Answer and Counterclaim." This entry does not provide the Court with any guidance as to how much time was actually devoted to finalizing the pleading, to the telephone conference and to the correspondence.

Terms used to describe services raise questions. There are no less than 95 time entries in which a lawyer reviewed something. In most instances "review" appears to be merely a synonym for "read," a less impressive term. After all, anyone can read, but it takes a lawyer to review. In other instances, it appears that the review was more than simply a reading and may have been a study or consideration.

An even more amorphous term is "analysis." The Phoenix lawyers are great on analysis. There are no less than 15 time entries for analysis. Some are for "review and analysis." An entry for November 10, 1983, logs five hours for "analysis of respondeat superior theory; analysis of fraud claims." One has difficulty picturing what this lawyer was doing during these five hours of analysis. The term is not synony-

mous with research; when the lawyer engaged in research, he said so. Perhaps analysis is equivalent to pondering—"to weigh mentally; think deeply about; consider carefully." Webster's New World Dictionary. When the Court attempts to envision a lawyer engaged in five hours of analysis, Rodin's "The Thinker" comes to mind.

Defendant is a California corporation. It is regularly represented by the San Francisco law firm. When this action was commenced, that firm retained the Phoenix law firm to represent the defendant in defending the action. The time records indicate considerable duplication of effort. Phoenix counsel appear to have done little without a discussion with San Francisco counsel over the telephone. There were no less than 58 telephone conferences of Phoenix and San Francisco lawyers. Obviously, with the client in California, it would frequently be necessary for Phoenix counsel to confer with San Francisco counsel in order to obtain information, and credit has been given for the time spent in such conferences. Other telephone conferences involved discussions of procedure or strategy. The time spent on those conferences has been discounted. Once the Phoenix firm was entrusted with the defense of the action, anything done by the San Francisco firm in formulating a defense strategy was essentially duplicative.

The foregoing instances of duplication are mentioned only as examples and are not intended to be exhaustive.

Some of the times logged by lawyers for the same telephone conference, call into question the accuracy of the time records. For example, in one instance a lawyer logged 0.20 hour, while his counterpart logged one hour; in another, one lawyer logged 0.65 hour and his counterpart logged 1.80 hours. The accuracy of time records is further called into question by one lawyer's claim to have logged 18.9 hours in one day. To have accomplished this, he would have had to have been in his office from 5:06 in the morning until midnight, without taking any time for meals, to relieve himself or to do anything else.

There were numerous billings that the Court considers excessive. The previously mentioned 18.9 hours logged by one lawyer in one day is almost *ipso facto* excessive. The times recorded for legal research and drafting appear excessive, particularly when consideration is given to the fact that there really was no merit to plaintiff's claims.

For example, a lawyer logged 14.8 hours in legal research relating to plaintiff's fraud claims and another 8.2 hours in "research and draft[ing]" the portion of the motion to dismiss or for summary judgment that attacked plaintiff's fraud claims. The common law fraud claim was clearly defective, because it alleged a promissory representation and plaintiff could not produce any evidence that defendant had no intention to perform when the representation was made. Similarly, plaintiff's consumer fraud claim could not stand because there was no sale by defendant to plaintiff, but only a license. The expenditure of 14.8 hours to determine these two elementary principles of law is unreasonable.

The preparation of answers to plaintiff's interrogatories represented in large part excessive legal work, not so much because of the time involved, but because time spent in investigation and compilation of facts could have been accomplished by a paralegal. A San Francisco lawyer spent about 7.5 hours in gathering information and drafting answers to plaintiff's interrogatories. His work product was then sent to Phoenix where a lawyer spent about 18 hours drafting answers to the interrogatories. When he had completed his work, another lawyer, a partner, then spent 3 hours revising and finalizing the interrogatory answers. The Court treats the partner's 3 hours as the only legal work involved; the other work could have been performed by a paralegal.

A law clerk logged 3.2 hours for "research re: procedural requirements for Answer and Counterclaim," for which $144 is claimed. A lawyer who finds it necessary

to assign a law clerk to research that question probably should not be involved in litigation. In any event, the procedural requirements for answer and counterclaim are concisely set forth in Rules 7 through 13 of the Federal Rules of Civil Procedure and certainly do not require 3.2 hours of anyone's time for research.

A paralegal spent 13 hours in the preparation of a case notebook for oral argument, for which $455 is claimed. A quick count indicates that plaintiff cited about 32 cases in its memoranda and defendant cited 18 cases in its response, a total of 50 cases. It is difficult to believe that a paralegal would have to spend more than three hours in obtaining cases from the library, photocopying them and inserting them into a notebook.

The sum of $510 is claimed for the six hours spent by an associate in preparing for oral argument in opposition to a motion to amend. One wonders if he was attempting to memorize his memorandum of points and authorities. The argument in behalf of both sides could not have consumed more than half an hour, and was probably considerably less.

A partner who assisted in the preparation for oral argument and who also attended the argument, recorded 2.2 hours for which $330 is claimed. On the basis of observations of the frequent presence at oral argument of more than one lawyer of a law firm, the Court has long suspected that the client is being billed for the presence of all the lawyers even though only one presents the argument. The partner's presence at the oral argument in this case tends to confirm the suspicion. Notwithstanding the many hours of preparation for argument in opposition to the motion to amend and the attendance of a partner at oral argument, the motion was granted.

A paralegal logged 15.5 hours drafting the application for attorney's fees. Since a lawyer also spent 19.5 hours redrafting the application, the Court suspects that the paralegal's role was to prepare the schedule and description of services from the time records. The Court assumes that these records are on a computer and can be readily retrieved. The real time would be involved in listing the services in chronological order. One questions that this task would consume 15 hours.

The claim for $53,878.90 as attorney's fees indicates a gross lack of billing judgment by defendant's attorneys. Counsel owed a duty not only to the Court but to their own client to make a good faith effort to exclude hours that were excessive, redundant, or otherwise unnecessary. They have failed to do so.

Finally, defendant seeks an award of $2,142.31 for "expenses related to rendition of legal services." They consist of the costs of telephone calls, telecopying, Federal Express, Lexis research, photocopies, and binding. The statutory authority to award "a reasonable attorney's fee" includes the authority to award reasonable out-of-pocket expenses incurred by the attorney that are normally charged to the client in the course of providing legal services. *See Thornberry v. Delta Air Lines, Inc.*, 676 F.2d 1240, 1244–45 (9th Cir.1982). Such expenses must have been "reasonably and necessarily incurred in the clients [*sic*] interest." *Cantrell v. Vickers*, 524 F.Supp. 312, 319 (N.D.Miss.1981).

Defendant's attorneys have not shown that the claimed expenses were charged to the client. They have not shown the necessity of sending papers by Federal Express or by telecopying, or of photocopying costs of $1,370.60. The Court recognizes that modern law firms use photocopies rather than carbon copies. However, assuming that the cost of photocopying is twenty cents per page, counsel for the defendant made 6,853 photocopies. There is no showing that so many were necessary.

IT IS ORDERED awarding attorney's fees to defendant in the sum of $38,000.