In re VISTA FOODS USA,
INC., Debtors.

Bankruptcy No. 96–12890–BH.

United States Bankruptcy Court,
W.D. Oklahoma.

April 14, 1999.

James Vogt, Reynolds, Ridings, Vogt & Morgan, Oklahoma City, Oklahoma, for the trustee.

Barbara A. Shangraw, Acting United States Trustee, by Herbert M. Graves, Assistant United States Trustee, Oklahoma City, Oklahoma.

## MEMORANDUM OF DECISION AND ORDER AWARDING COMPENSATION

RICHARD L. BOHANON, Bankruptcy Judge.

The law firm of Reynolds, Ridings, Vogt & Morgan is counsel for the Chapter 7 trustee. It also represented the creditors who brought the involuntary petition, and then the Unsecured Creditors Committee while the case was one under Chapter 11. The firm has been allowed compensation of $14,853 for its services in connection with the case. Now it requests a "bonus" for extraordinary success in recovering assets for the estate. The United States Trustee objects. However, neither the debtor, which will have a surplus returned to it, nor any creditor objected. These are the only parties having a pecuniary interest in the case.

### BACKGROUND

The movant originally represented an unsecured judgment creditor of the debtor. Investigation revealed that the debtor had ceased business and its principals had abandoned it.

Movant discovered a lien on the debtor's assets securing a note for $2,000,000 that had been recently perfected in favor of an entity named Mega Oil. The transaction raised serious questions as to the validity of the lien and indicated there was some affiliation between the debtor and Mega Oil.

Movant subsequently initiated an involuntary Chapter 7 petition against the debtor and testimony indicates it received a number of veiled threats. The debtor then succeeded in converting the case to one under Chapter 11, but failed to accomplish any significant steps in reorganization. As a result, the movant reconverted the case to one under Chapter 7.

The law firm was then employed by the Chapter 7 trustee and, *inter alia*, sought to avoid the lien as fraudulent, and this goal was achieved. It also successfully objected to a questionable $2,000,000 proof of claim by the former operations manager of the debtor. The assets of the estate were then efficiently and successfully liquidated.

Consequently, and as a result of the law firm's efforts, all creditors will be paid in full with interest. Moreover, even if the requested $20,000 "bonus" is awarded, the testimony indicated that over $100,000 will be returned to the debtor. Without the law firm's initiative, perseverance, and skill, this result plainly would not have occurred.

## ISSUES

The issues are allowance of a "bonus" and the amount to be allowed. However, they are not as clear as the motion suggests.

One problem is movant's use of the term "bonus". Although the term, and its equivalents (such as "enhancement") have been used in a number of decisions, I hesitate to employ it, for its use belies the true issue.

For example, requesting a "bonus" implies that if attorneys did something less than a competent performance, they would still be entitled to "full" compensation. This could be tantamount to approving incompetence or allowing unreasonable compensation.

Also, using "bonus" implies that the movant actually performed *more* than was required of reasonably competent attorneys. This, in turn, implies not only that it is acceptable for attorneys in similar circumstances *not* to perform at the highest level but also that attorneys, as a matter of entitlement, deserve to be compensated no matter what services they performed or failed to perform in representing their client.

Additionally, these implications raise questions about lawyers' use of hourly billing, which is the very foundation of, not only the initial fee award to the movant in this case, but also the determination of legal fees currently in vogue in the American legal system. Indeed, the device is being subjected to increasing criticism. Moreover, the use of hourly billing as the basis for attorneys' fees calculations has

been the subject of numerous judicial decisions.

Thus, the issues are multifold:

1) is a "bonus" proper in the allowance of legal fees in bankruptcy cases?;

2) is hourly rate billing, both as a sole measure and as an overriding criterion, proper in the determination of legal fees?;

3) how should reasonable legal fees be determined?; and

4) what are the reasonable legal fees in this case?

One additional preliminary matter must be addressed. The law firm has already been awarded compensation and now requests additional compensation in the form of a "bonus." Accordingly, the initial compensation already awarded to the movant will be considered its interim award and this request will be considered an application for final compensation.

## HISTORY & PHILOSOPHY OF LEGAL FEES

In the early years of the Roman Empire advocates provided their services free of charge, because most were patrons and obliged to defend their clients. Over the years, the custom of paying advocates an honorarium for legal services developed. However, in 204 B.C.E., a statute was adopted which forbad compensation for pleading a case and, two centuries later, under Augustus, the Senate prohibited advocates from accepting compensation under severe penalties. However, even with the existence of these regulations, acceptance of gratuities by Roman advocates became widespread. Finally, under the Emperors Claudius and Justinian, payment for legal services was officially sanctioned.[1]

In medieval England, fees for legal services were permitted although regulated. During the 1600s, the regulations began to

1. Roscoe Pound, *The Lawyer From Antiquity* to *Modern Times* 51–53 (1953).

erode.[2] In opposition to regulation, one early English legal work stated that the factors to be employed when determining fees are, the amount in dispute, the labor, the "usage" of the court, and the advocate's learning, eloquence, and reputation.[3]

A number of the American colonies regulated attorneys' fees.[4] Over the years, these regulations came under increasing criticism and were frequently disused, until most were repealed in the 1800s.[5]

Philosophically, and as a matter of basic contractual and commercial law, there is little doubt that attorneys deserve compensation for their work.[6] The days of advocates providing legal services, *gratis*, have, for the most part, passed. The problem, as a matter of practical application, is how to fix the fees in a fair and equitable manner.

In the 1950s, the practice of hourly billing came into common use in the United States and was viewed by many as an objective solution to the problem of awarding legal fees.[7] Prior to this time, fees

were charged according to the good judgment and discretion of the lawyer. Under this system of billing, it was common for different attorneys to charge different fees for the same legal services. Calculation of legal fees depended upon whatever subjective criteria each attorney wished to use and there were few objective standards for clients to evaluate the fees they were charged.

Other common methods of billing are fixed and contingent fees. However, these do not impact directly on this contested matter and need not be addressed.

The practice of hourly billing has been subject to severe criticism in recent years, both from without and within the profession.[8] Some of the major complaints brought forth against the practice are: (1) padding of legal bills,[9] (2) the provision of unnecessary legal services such as abuses of discovery,[10] (3) penalizing efficiency and rewarding inefficient attorneys,[11] and (4) the unfairness to certain clients because of attorney inexperience.[12] To state the

2. Wilfred Prest, *The English Bar, 1550–1700*, in *Lawyers in Early Modern Europe and America* 72 (Wilfred Prest ed., Holmes & Meier 1981).

3. George D. Hornstein, *Legal Therapeutics: The "Salvage" Factor in Counsel Fee Awards*, 69 Harv.L.Rev. 658, 660 n. 11 (1956) (quoting *The Mirror of Justices*, Book II, c. 5 (Seldon Society ed. 1895)).

4. Roscoe Pound, *The Lawyer From Antiquity to Modern Times* 136–37 (1953); 1 Anton–Hermann Chroust, *The Rise of the Legal Profession in America* 85–89, 129–32, 159–60, 317–19 (University of Oklahoma Press 1965).

5. *See* William G. Ross, *The Ethics of Hourly Billing by Attorneys*, 44 Rutgers L.Rev. 1, 10 (1998).

6. Edwin Countryman, *The Ethics of Compensation for Professional Services* (Little 1882).

7. William G. Ross, *The Ethics of Hourly Billing*, 44 Rutgers L.Rev. 1, 11 (1998); Mary Ann Altman, *A Perspective—From Value Billing to Time Billing and Back to Value Billing* in *Beyond the Billable Hour* 11 (Richard C. Reed ed., American Bar Association 1989).

8. *See, e.g., City of Burlington v. Dague*, 505 U.S. 557, 566, 112 S.Ct. 2638, 120 L.Ed.2d 449 (1992) (citing *Report of the Federal Courts Study Committee* 104 (Apr 2, 1990) (noting that the use of the "lodestar" method (*i.e.,* hourly billing) may give lawyers an incentive to expend and bill hours unnecessarily)).

9. William G. Ross, *The Ethics of Hourly Billing*, 44 Rutgers L.Rev. 1, 12–13 (1998); Derek Bok, *The Cost of Talent* (Free Press 1993); Chief Justice William Rehnquist, Dedicatory Address, 62 Ind.L.J. 151 (1987).

10. William G. Ross, *The Ethics of Hourly Billing*, 44 Rutgers L.Rev. 1, 13 (1998); Derek Bok, *The Cost of Talent* 149–50 (Free Press 1993); Sol Linowitz & Martin Mayer, *The Betrayed Profession* 106–10 (Scribner 1994).

11. William G. Ross, *The Ethics of Hourly Billing*, 44 Rutgers L.Rev. 1, 17 (1998); Alberta Cook, *Hourly Fees Are Still The Key*, The National Law Journal, Nov. 1988, at S2.

12. The unfairness lies in the fact that once an attorney bills for the time it requires him to research and prepare a case, all future clients who have the same problem will be billed significantly less because the research and

problem more plainly—hourly billing has contributed significantly to the decline of lawyering as a respected profession. Since the economic incentive provided the lawyer working for an hourly fee is to make the engagement more time consuming and complex, it is not hard to see why this decline has occurred.

One of the more philosophically attractive alternatives to hourly billing is "value" billing. It incorporates the concept of charging a fee based upon the value of services rendered.[13]

In an attempt to address this concept, one author advocates using three factors to determine value: responsibility, expertise, and productivity.[14] However, he provides little practical guidance on how to assign monetary values to these factors. Other sources provide different ideas, but many of them tend to focus on accurate, technology-dependent, accounting of actual costs which benefit the client combined with client participation in fixing the fee. In other words, these methods tend to be more meaningful ways of determining reasonable fees, compared to the crude method of simply assigning hourly rates. Regardless of which method is used, the market place, both theoretically and judicially, is a factor to be considered.[15]

The question must then be asked, what consideration do these criticisms and any possible remedies, no matter how justified, merit in a judicial decision which must adhere to precedent? The response is threefold. First, criticism of strict hourly fees has been advanced by numerous courts in published decisions.[16] Second, where the precedents are inconsistent, the justifications for a judicial decision must rest on, not only that part of the law which is clear and settled, but also on sound logic and philosophy, with due respect for equity, justice, and common sense. Third, there does exist precedent which, at least in part, addresses the problems and seems to embrace the legal, equitable, and philosophically sound principles of value billing, while retaining the objective benefits of hourly fees.

Thus, the basis to be employed in the calculation of legal fees must focus on the *value* of the legal services to the client.

preparation is already, for the most part, completed. Paul Freeman, *Is Hourly, Billing Obsolete?* 10 Calif. Lawyer (Feb.1990). *See also* William G. Ross, *The Ethics of Hourly Billing*, 44 Rutgers L.Rev. 1, 33 (1998)

13. An anecdotal example of this type of billing is an experience of one of this court's acquaintances several years past.

The attorney in question was a renowned expert in a certain field of law. As a result of his reputation, a large corporation hired him to represent it in a matter upon which a 25 million dollar contract depended. It was agreed that the fee would be "reasonable" but the corporation asked the attorney to keep a record of his time spent, to which the attorney agreed.

The attorney subsequently won the case in question, within a few months, by merely serving a motion to dismiss and supporting brief. A long, drawn-out trial was avoided and the contract was timely executed. The attorney then submitted his bill for $25,000 and a memorandum listing his time spent as 5 hours.

The corporation was less than pleased with his hourly rate and disputed the bill. Howev-

er, after discussions with the attorney, which focused on the value of the case to the corporation ($25,000,000), the fee of $25,000 was agreed to be reasonable and was promptly paid.

14. Richard C. Reed, *Responsibility, Expertise, Productivity: The True Measure of Value of a Lawyer's Services* in *Beyond the Billable Hour* 79 (Richard C. Reed ed., American Bar Association 1989).

15. *See* Charles Silver, *Incoherence and Irrationality in the Law of Attorneys' Fees*, 12 Rev.Litig. 301, 313 (1993) (citing *Missouri v. Jenkins*, 491 U.S. 274, 286, 109 S.Ct. 2463, 105 L.Ed.2d 229 (1989) and *Hensley v. Eckerhart*, 461 U.S. 424, 435, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983)).

16. *See. e.g.*, William G. Ross, *The Ethics of Hourly Billing*, 44 Rutgers L.Rev. 1, 13 (1998) (citing *Henry v. First National Bank*, 603 F.Supp. 658, 664 (N.D.Miss.1984); *Metro Data Systems, Inc. v. Durango Systems, Inc.*, 597 F.Supp. 244, 246 (D.Ariz.1984); *Ramos v. Lamm*, 713 F.2d 546, 553 n. 2 (10th Cir. 1983)).

The difficulties inherent in determining this value are recognized. However, not only is there significant support for this position in current law but there are also objective factors which can be practically applied to fix a reasonable legal fee. These factors reflect and consider the value of the legal services rendered, despite the current trend of focusing on the hourly rate, which is encompassed in what is euphemistically called the "lodestar" method.

*LAW*

■ The Bankruptcy Code provides for awards of attorneys' fees, but they must be reasonable. 11 U.S.C. § 330(a)(1)(A). By statute, the following factors must be considered when determining reasonableness: the time spent on the services; whether the time spent was commensurate with the complexity, importance and nature of the services; the rate of compensation; whether the compensation is similar to fees of comparable practitioners; the necessity of the services; and the benefit to the estate. 11 U.S.C. § 330(a)(3). Indeed, this section of the Bankruptcy Code refers specifically to the *value* of the services:

> (3)(A) In determining the amount of reasonable compensation to be awarded, the court shall consider the nature, the extent, and the *value* of such services, taking into account all relevant factors, including—
>
> . . . .

11 U.S.C. § 330(a)(3)(A) (emphasis added). Significantly, "time spent" is only one of several factors which are supposed to be considered.

■ The United States Supreme Court has broadly expressed what the term "attorney's fee" encompasses. It refers not only to the hours an attorney expends but, rather, to the entire work product. *Missouri v. Jenkins*, 491 U.S. 274, 285, 109 S.Ct. 2463, 105 L.Ed.2d 229 (1989). Thus, an attorney's fee includes the costs of secretaries, paralegals, and other expenses in the nature of office overhead.[17]

■ In all cases, however, any fee must be reasonable. *See Missouri v. Jenkins*, 491 U.S. 274, 285, 109 S.Ct. 2463, 105 L.Ed.2d 229 (1989). Thus, determining what is reasonable is the essential element of any analysis.[18] 11 U.S.C. § 330(a).

One of the most often cited decisions on the subject is *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974). *Johnson* lists twelve factors: (1) time and labor required, (2) novelty and difficulty of the issue, (3) skill required, (4) preclusion of other employment, (5) customary fee, (6) whether the fee is fixed or contingent, (7) time limitations, (8) amount involved and results obtained, (9) experience, reputation, and ability of counsel, (10) undesirability of the case, (11) nature and length of professional relationship with the client, and (12) awards in similar cases. *Id.* at 717–19. As a general rule, the Court of Appeals for the Tenth Circuit has held that the *Johnson* factors should be considered in determining whether an attorney's fee is reasonable. *Rosenbaum v. MacAllister*, 64 F.3d 1439, 1445 (10th Cir.1995); *Gottlieb v. Barry*, 43 F.3d 474, 483 (10th Cir.1994).[19]

The Court of Appeals has also held specifically that the *Johnson* factors are to be used in determining the reasonableness of

---

17. There is the caveat that some tasks, such as clerical work, should not be billed at the same rate as attorneys. *Jenkins*, 491 U.S. at 288 n. 10, 109 S.Ct. 2463.

18. There is no one precise formula to determine what constitutes reasonable compensation. 1 Robert L. Rossi, *Attorneys' Fees* § 5.1 at 237 (2nd ed.1995).

19. Despite the approval of the Court of Appeals for the Tenth Circuit, there are some limitations on the use of the *Johnson* factors. The Supreme Court has expressed its disapproval of the use of the *Johnson* factor of contingency in determining the *enhancement* of a the "lodestar" figure to arrive at a reasonable legal fee. *City of Burlington v. Dague*, 505 U.S. 557, 566–67, 112 S.Ct. 2638, 120 L.Ed.2d 449 (1992).

attorneys' fees in bankruptcy cases. *First National Bank of Lea County v. Niccum (Matter of Permian Anchor Services. Inc.),* 649 F.2d 763, 768 (10th Cir.1981). And the statutory considerations for reasonableness under the Bankruptcy Code are encompassed within the list of *Johnson* factors. *See In re Reconversion Technologies, Inc.,* 216 B.R. 46, 52–53 (Bankr. N.D.Okla.1997).

 Generally, the method used to calculate reasonable fees consists of two steps. The first is to obtain the "lodestar" figure which is the product of multiplying the reasonable rate of compensation[20] by the reasonable number of hours expended. *Hensley v. Eckerhart,* 461 U.S. 424, 433, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983); *Blum v. Stenson,* 465 U.S. 886, 888, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984). Then, this figure may be adjusted, up or down, according to other factors. *Hensley,* 461 U.S. at 434, 103 S.Ct. 1933; *Phelps v. Hamilton,* 120 F.3d 1126, 1130–31 (10th Cir.1997).

However, the Supreme Court, subsequent to *Hensley,* held that the "lodestar" figure incorporates a number of the *Johnson* factors[21] and that any upward adjustments should be allowed only in rare and exceptional cases, supported by specific evidence. *Blum,* 465 U.S. at 898–900, 104 S.Ct. 1541; *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air,* 478 U.S. 546, 565, 106 S.Ct. 3088, 92 L.Ed.2d 439 (1986) (*Delaware Valley I*).[22] A "strong presumption" in favor of the "lodestar" permeates these decisions. These authorities appear to indicate that the *Johnson* factors are being supplanted by an overriding reliance upon the hourly rate for the determination of a reasonable legal fee.

In contrast, four years later, the Supreme Court acknowledged the *Johnson* factors as relevant to any adjustment to the "lodestar" amount, stating that no *one* factor can substitute for the "lodestar." *Blanchard v. Bergeron,* 489 U.S. 87, 94, 109 S.Ct. 939, 103 L.Ed.2d 67 (1989). Thus, it appears that *Blanchard* presents a relaxation of the rule of rare and exceptional circumstances and any hesitation to rely on the *Johnson* factors, as articulated in Delaware Valley I, has been relaxed.[23] Even though *Blanchard* cited *Delaware Valley I,* it referred to the presumption of the reasonableness of the "lodestar" figure and not to any rejection of the use of the *Johnson* factors. Indeed, by a plain language interpretation of *Blanchard,* it seems that more than one of the *Johnson* factors would provide a sufficient basis, under existing law, for, not only an upward adjustment of the "lodestar" figure, but for any adjustment, even though a number of the *Johnson* factors are, generally, considered to be already present in the "lodestar" calculation. *See Blanchard,* 489 U.S. at 94, 109 S.Ct. 939.[24]

**20.** In the Tenth Circuit, the establishment of a reasonable hourly rate is within the discretion of the trial court and is to be based upon: (1) the instant case and (2) the prevailing rate in the area. *Smith v. Freeman,* 921 F.2d 1120, 1122 (10th Cir.1990).

**21.** The factors that were stated to be subsumed in the "lodestar" figure, at least for enhancement purposes, are: novelty and complexity of issue, special skill and experience of counsel, quality of representation, and results obtained.

**22.** *Collier's* also indicates that fee enhancement should be left to rare and exceptional circumstances. 3 Lawrence P. King, *Collier on Bankruptcy,* ¶ 330.04[5] (15th ed. rev. 1998). However, *Collier's* does not appear to address *Blanchard v. Bergeron,* 489 U.S. 87, 109 S.Ct. 939, 103 L.Ed.2d 67 (1989), which seems to undermine the authority as explained, *infra.*

**23.** Indeed, in a concurrence to *Blanchard,* Justice Scalia bemoans the fact that the *Blanchard* decision grants the *Johnson* factors authoritative status, which, he claims, were essentially rejected in *Delaware Valley I. Blanchard v. Bergeron,* 489 U.S. 87, 99, 109 S.Ct. 939, 103 L.Ed.2d 67 (1989) (Scalia, J., concurring in part).

**24.** However, as previously discussed, in *City of Burlington v. Dague,* 505 U.S. 557, 112 S.Ct. 2638, 120 L.Ed.2d 449 (1992) decided

The Court of Appeals for the Tenth Circuit has followed this trend of rejecting restrictions on the use of the *Johnson* factors in analyzing the reasonableness of attorneys' fees. Although the Court of Appeals recognized *Delaware Valley I*, and its restrictions on using certain *Johnson* factors to justify an upward adjustment of an attorney's fee, it then stated:

> **Nonetheless**, "[t]he product of reasonable hours times a reasonable rate does not end the inquiry [because] there remain other considerations that may lead the district court to *adjust the fee upward* or downward." *Hensley*, 461 U.S. at 434, 103 S.Ct. at 1940. Accordingly, we have looked to the factors set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir.1974) (cited with approval in S.Rep. No. 1011, at 6, reprinted in 1976 U.S.C.C.A.N. at 5913; H.Rep. No. 1558, at 8), to guide the district court's calculation and our review of a reasonable attorney's fee under the statute. *See Ramos v. Lamm*, 713 F.2d 546, 552 (10th Cir.1983). *See also Blanchard v. Bergeron*, 489 U.S. 87, 93, 109 S.Ct. 939, 944, 103 L.Ed.2d 67 (1989) ("*Johnson's* 'list of 12' ... provides a useful catalogue of the many factors to be considered in assessing reasonableness of an award of attorney's fees"); *Hensley*, 461 U.S. at 434 n. 9, 103 S.Ct. at 1940 n. 9 ("[t]he district court also may consider other factors identified in *Johnson* ..., though it should note that many of these factors usually are subsumed within the

initial calculation of hours reasonably expended at a reasonable rate").

*Homeward Bound, Inc. v. Hissom Memorial Center*, 963 F.2d 1352, 1356 (10th Cir. 1992) (emphasis added). This quotation is important. The highlighted word, "nonetheless", as a matter of linguistics, minimizes the value of the *Homeward Bound's* cite to *Delaware Valley I* and its prohibition of reliance on the *Johnson* factors. But this quotation does not indicate that the Court of Appeals for the Tenth Circuit was ignoring the ruling of *Delaware Valley I*, but, rather, that it was giving proper recognition to the subsequent ruling of *Blanchard*, which acknowledges the *Johnson* factors.

This conclusion is supported not only by the quotation but also by the strong logical implications inherent in the instant analysis and by direct reference to Justice Scalia's remarks in his concurrence in *Blanchard*. Thus, any hesitation in relying on the validity of the *Johnson* factors for determining a reasonable legal fee is unfounded and use of these factors in determining any adjustment, upward or downward, to the "lodestar" figure is proper.[25]

■ However, analyzing the reasonableness of an attorney's requested fee is not, of itself, sufficient for the award of attorneys' fees in a bankruptcy case. To decide whether compensation for an attorney, under 11 U.S.C. § 330, is proper, three other steps must be followed. The court must determine: (1) whether the billed services are compensable, (2) whether the billed services were actual and necessary, and (3)

after *Blanchard*, the Supreme Court expressly rejected an enhancement of the "lodestar" figure for the single *Johnson* factor of contingency.

**25.** In another case decided after *Homeward Bound*, the Court of Appeals for the Tenth Circuit cited *Blanchard v. Bergeron*, as authority for the continued use of the *Johnson* factors in determining the reasonableness of an attorney's fee, without any acknowledgment of the restrictions mentioned in *Delaware Valley I*. *Rubner & Kutner, P.C. v. United States Trustee (In re Lederman Enterprises, Inc.)*, 997 F.2d 1321, 1323 (10th Cir.1993). Thus, this

decision provides additional support for the position that the *Johnson* factors are an authoritative standard for evaluating the reasonableness of attorneys' fees.

In contrast, the decision of *Mares v. Credit Bureau of Raton*, 801 F.2d 1197 (10th Cir. 1986), may be cited as authority that *Delaware Valley I*, and its restrictions on the use of the *Johnson* factors, is still controlling in the Tenth Circuit. However, *Mares* was decided before *Blanchard* and the previously cited Tenth Circuit decisions which indicate otherwise. Thus, *Mares* is not controlling.

whether the billed services are reasonable. *In re Cascade Oil Company, Inc.*, 126 B.R. 99, 103 (D.Kan.1991); 3 Lawrence P. King, *Collier on Bankruptcy*, ¶ 330.04[2] (15th ed. rev.1998). *See also Rubner & Kutner, P.C. v. United States Trustee (In re Lederman Enterprises, Inc.)*, 997 F.2d 1321, 1323 (10th Cir.1993).

█ To meet the first requirement, the attorney must show that the fee is compensable. *Id.* One example of noncompensable services would be the fees of an attorney for the debtor-in-possession, in a Chapter 11 case, which were incurred prior to obtaining the bankruptcy court's approval of the employment. *See* 11 U.S.C. §§ 327(a), 1107(a) and Fed.R.Bankr.P. 2014(a). Such services are, generally, not compensable. *See In re S.T.N. Enterprises, Inc.*, 70 B.R. 823, 831 (Bankr.D.Vt. 1987).

█ Also, services found to be excessive, redundant, or unnecessary are not compensable. *See Hensley*, 461 U.S. at 434, 103 S.Ct. 1933. *See also Smith v. Freeman*, 921 F.2d 1120 (10th Cir.1990). However, the courts do not always engage in an *ex post facto* reduction of fees because the services are later determined to be unnecessary. Rather, the test is that the services must have appeared to have been reasonable at the time they were performed. *See Grant v. Martinez*, 973 F.2d 96, 99 (2nd Cir.1992), *cert. denied*, 506 U.S. 1053, 113 S.Ct. 978, 122 L.Ed.2d 132 (1993). *See also Wooldridge v. Marlene Industries Corporation*, 898 F.2d 1169, 1177 (6th Cir.1990); *Independent School District v. Digre*, 893 F.2d 987, 992 (8th Cir.1990).

█ For the second requirement there are two prongs: "actual" and "necessary." To be actual, the lawyer must show that the services for which the fee is claimed were, in fact, performed. *Max Rouse & Sons, Inc. v. Specialty Plywood, Inc. (In re Specialty Plywood)*, 160 B.R. 627, 632 (9th Cir. BAP 1993); 3 Lawrence P. King,

*Collier on Bankruptcy*, ¶ 330.05[1] (15th ed. rev.1998).

█ To be necessary, the services for which compensation is claimed must have been incurred to accomplish the task for which the attorney was employed. *Max Rouse & Sons, Inc. v. Specialty Plywood, Inc. (In re Specialty Plywood)*, 160 B.R. 627, 632 (9th Cir. BAP 1993); 3 Lawrence P. King, *Collier on Bankruptcy*, ¶ 330.05[1] (15th ed. rev.1998). If there were available more reasonable (and less expensive) alternatives for accomplishing a legal goal, the services may be deemed unnecessary and, thus, will fail to meet this aspect of the test.

█ One other proviso on the compensation of attorneys in bankruptcy cases should be mentioned. If the attorney requesting compensation represents the trustee or debtor-in-possession, compensation will, generally, not be allowed unless the services resulted in a benefit to the estate. *See also Rubner & Kutner, P.C. v. United States Trustee (In re Lederman Enterprises, Inc.)*, 143 B.R. 772, 775 (D.Colo.1992), *affirmed*, 997 F.2d 1321, 1323–24 (10th Cir.1993). *See also In re MFlex Corporation*, 172 B.R. 854, 857 (Bankr.W.D.Tex.1994); *In re Kingsbury*, 146 B.R. 581, 585 (Bankr.D.Me.1992). However, these authorities acknowledge that this does not mean counsel will not, *per se*, receive any compensation if there is no actual benefit. Rather, they hold the services rendered must have some basis in reason and a good faith belief that the estate will benefit, even if they are later proven unsuccessful.

This court recognizes that its decision in *In re Seneca Oil Company*, 65 B.R. 902 (Bankr.W.D.Okla.1986), placed great reliance upon the use of the "lodestar" figure and hourly rates. Although this instant decision does not repudiate the proper use of the "lodestar" figure within the context of the law as discussed, *Seneca*'s reliance on it was too technical, especially in light of *Blanchard v. Bergeron* and the subse-

quent decisions. Thus, to the extent that *Seneca* conflicts with this decision, this one controls.

▮▮▮▮ In summation, the law to be applied to the question of determining a reasonable legal fee ought to focus on the value of the services to the client. The determination of that value [26] fundamentally rests upon the *Johnson* factors, which have been acknowledged by the Court of Appeals for the Tenth Circuit. These factors represent reasonably objective criteria to evaluate what is, without doubt, a question involving various subjective factors which are difficult to quantify.

However, as the *Johnson* factors obviously do not cover all the possible elements which could determine a reasonable fee, this decision should not be construed to limit any analysis to only these factors. Authority for selecting additional factors is found in *Blanchard*, 489 U.S. at 94, 109 S.Ct. 939. There, the Supreme Court stated: "[T]he courts may then adjust this lodestar calculation by other factors." The Court did not state that these other factors were limited to those mentioned in *Johnson*, and any analysis must begin, but not end, with calculation of the "lodestar" figure.[27]

However, a bankruptcy case is a unique creature to the American legal system. An entire title of the United States Code is devoted to bankruptcy. Bankruptcy has its own rules which address many unique situations. Further, bankruptcy is a specialized field of law which Congress has recognized merits its own courts. Moreover, a bankruptcy case does not, generally, involve adversary parties in the traditional manner. Finally, a bankruptcy case usually involves a number of interested entities (*i.e.*, creditors) who are not, strictly speaking, parties to the case. In acknowledgment of these unique aspects, several additional relevant and material factors should be considered in the determination of a reasonable legal fee in a bankruptcy case.

The first additional factor is value to the estate. Although this factor could be considered as included in the eighth *Johnson* factor, results obtained, there are subtle differences. In a traditional suit, the eighth *Johnson* factor would generally focus on whether one of the adversarial parties prevailed. In a bankruptcy case, one of the goals is not necessarily to prevail over an adversary, but to maximize the assets of the estate for the benefit of all the creditors. This can be accomplished with or without the use of the subordinate adversary proceeding within the bankruptcy case.[28]

The second additional factor which will be considered is the effect on the creditors. This element does not appear to be encompassed in any of the *Johnson* factors [29] and

---

**26.** However, value, at least in this context, will not be limited to a monetary figure. Value can include other factors, such as the vindication of an important civil right. *See generally* 1 Robert L. Rossi, *Attorneys' Fees* § 5.7 at 257–61 (2nd ed.1995).

**27.** The use of the "lodestar" technique in combination with the *Johnson* factors has been criticized as cumbersome, enervating, and surrealistic. *Swedish Hospital Corporation v. Shalala*, 1 F.3d 1261, 1266 (D.C.Cir. 1993) (citing *Court Awarded Attorney Fees, Report of the Third Circuit Task Force*, 108 F.R.D. 237, 255 (1986)). However, as previously acknowledged, the Supreme Court has mandated the use of the "lodestar" technique and it must be employed until the law is changed.

**28.** This factor has been implicitly acknowledged in another bankruptcy decision. *See In re Blue Coal Corporation*, 206 B.R. 721, 723 (Bankr.M.D.Pa.1997).

**29.** This consideration could be included in the eighth *Johnson* factor, results obtained, but, because it is focused on creditors, who are generally considered to be non-parties to the bankruptcy case, it will be considered separately. Logically, it follows that the eighth *Johnson* factor, results obtained, would only be applicable to parties who are directly represented by the attorney requesting the fees. In distinction, this factor, effect on creditors, examines the indirect results on non-parties, which, in a bankruptcy case, is highly relevant and which would not have such importance in other types of legal actions.

presents a consideration unique to bankruptcy fee calculation.

Creditors clearly have an interest in the estate in that it is formed for their benefit. Bankruptcy not only serves the purpose of giving debtors a fresh start, but it allows the creditors to realize some payment for the debts they are owed, when there is cash in the estate. Thus, any effect on the creditors should be considered when valuing legal services which increase or diminish the available amount of cash.[30]

Therefore, to recognize the value of the legal services the *Johnson* factors need to be considered. Further, to address the unique features of a bankruptcy case, these additional factors should also be considered in the determination of a reasonable fee. Of course, as required by the Supreme Court, the baseline for any calculation must be the "lodestar" figure.

## DISCUSSION

██ Since this is a request for compensation in excess of the "lodestar" the burden of proof lies with the movant. *Hensley v. Eckerhart*, 461 U.S. 424, 437, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983).

Under 11 U.S.C. § 330, the reasonableness of an attorney's fee is determined in three steps: 1) whether the services were compensable, 2) whether the services were actual and necessary, and 3) whether the services were reasonable. Steps 1 and 2 were already accomplished in the initial award of compensation to the movant. Neither the United States Trustee nor any creditor has objected under the first two steps.

As already explained, the first step in any award of reasonable attorneys' fees is calculation of the "lodestar" figure. In this case, this has already been done and the law firm has been awarded a fee of $14,853. A reasonable hourly rate of $170

was incorporated into the calculations of that interim award. What remains is to determine if the requested additional, or final, compensation is reasonable.

This case is somewhat different than other fee requests since an interim fee has already been awarded. What raises difficulties is that this court eschews use of the terms "bonus" or "enhancement" because of the previously discussed negative connotations their use entails. Therefore, the analysis for this request will focus on the reasonableness of the requested final compensation, in relation to the various factors.

██ The analysis begins with an examination of the *Johnson* factors with respect to the circumstances of this case and the request under consideration. These factors are: (1) time and labor required, (2) novelty and difficulty, (3) skill required, (4) preclusion of other employment, (5) customary fee, (6) whether fee is fixed or contingent, (7) time imitations, (8) amount involved and results obtained, (9) experience, reputation, and ability of counsel, (10) undesirability of the case, (11) nature and length of professional relationship with the client, and (12) awards in similar cases. *Johnson*, 488 F.2d at 717–19.

This movant has already been partially compensated for its time and labor, at least with regard to its hourly or "lodestar" fee. Thus, the first factor is not relevant to the pending request.

Concerning novelty and difficulty, the United States Trustee asserts that no "new" law was created as a result of this case and, thus, this factor does not enter into the analysis. This court disagrees. Although no "new" law was created, involuntary petitions are rare and have different requirements than voluntary cases. As the movant argues, they do require

---

**30.** This factor has been recognized in other bankruptcy decisions. *See In re Blue Coal Corporation*, 206 B.R. 721, 723 (Bankr. M.D.Pa.1997) (the first and third factors recited by the bankruptcy judge in justification of a fee enhancement). *See also In re Southern Merchandise Distributors, Inc.*, 117 B.R. 725 (Bankr.S.D.Fla.1990); *In re D.W.G.K. Restaurants*, 106 B.R. 194 (Bankr.S.D.Cal.1989).

more work and expertise than an ordinary voluntary bankruptcy petition. Although, as a theoretical matter, all lawyers should be able to handle involuntary petitions, as a practical matter, such is not the case. Moreover, in this case, there existed other factors, such as veiled threats against the movant and the debtor's intransigence, which contributed to the difficulty of the case. Thus, this factor does support the movant's request.

With regard to the skill required to handle the case, reference is again made to the fact that few petitions are involuntary and involuntary petitions do require specialized knowledge and expertise. Thus, this factor also weighs in support of the request.

There has been no evidence that the movant was precluded from accepting any other employment because of this matter. Thus, this factor is not relevant.

Concerning the customary fee and whether the fee was fixed or contingent, the United States Trustee correctly notes that initially this case was based on an hourly rate of $160 and that a rate of $170 was actually allowed. However, this court has already indicated that the slightly greater rate was not unreasonable. It must be acknowledged that if the movant had not prevailed on its involuntary petition, the likelihood that it would have been actually paid any amount, regardless of the hourly rate, was remote as there were little, if any, other assets to be recovered for the estate. Any bankruptcy judge can testify that it frequently happens that lawyers representing estates, regardless of the chapter, are often not paid or are paid only in part. Thus, the risk of non-payment must also weigh in favor of the request for additional compensation, as this was not a contingency fee case.[31]

Both the movant and the United States Trustee state that this case imposed no time limitations or pressures upon the movant. Since there is no dispute on this issue, this factor is irrelevant.

The results obtained by the movant for its client are not a consideration in this analysis for, as the attorney for the trustee, the movant was not representing a client who had a direct personal interest or stake in the outcome. However, there are related considerations which will be addressed in the discussion of "value to the estate" and "effect on the creditors". Thus, this factor does not appear relevant.

Concerning the movant's experience, reputation, and ability, counsel has been successfully and ably practicing bankruptcy law for over 20 years. Moreover, counsel's professional certifications, memberships, and activities, are acknowledged.

The United States Trustee argues that there was nothing undesirable about this case. Indeed, it appears that it may even have had a certain desirability in that it was somewhat unusual and interesting. Thus, this factor may weigh against the request.

Concerning the nature and length of the relationship of the movant with the client, no argument is presented for this factor in support of the request. The movant has represented the trustee in a number of cases, however, this fact does not support or detract from this request.

Finally, the movant cites two bankruptcy decisions which have awarded "bonuses." *See In re Southern Merchandise Distributors, Inc.*, 117 B.R. 725 (Bankr. S.D.Fla.1990); *In re Blue Coal Corporation*, 206 B.R. 721 (Bankr.M.D.Pa.1997). In *Southern Merchandise*, a bonus of $8,300 was awarded for a recovery of $100,600. In *Blue Coal*, a total bonus of $117,500 was awarded for a recovery of $9,300,000. In this case, the movant is only requesting $20,000 as its final com-

---

**31.** The Supreme Court's disapproval of the reliance on the contingency nature of a legal fee as grounds for enhancement, as expressed in *City of Burlington v. Dague*, 505 U.S. 557, 112 S.Ct. 2638, 120 L.Ed.2d 449 (1992), does not apply in this case, as the movant's fee was not contingent.

pensation. Considering the benefit to the estate and the bonuses awarded in these two similar cases, it cannot be said that this request is unreasonable. Thus, this factor also weighs in support of the request.

Further, from a bankruptcy perspective, this request should also be analyzed by comparing the amount of compensation to the value of the assets in the estate. That is to say, depending on the services rendered, a fee of $5,000 to an estate having only $10,000 may be considered excessive while the same fee in an estate having assets of $100,000 might not be considered excessive.

As previously acknowledged, the Supreme Court has stated that four of the *Johnson* factors are subsumed into the "lodestar" figure and should not be considered for fee enhancement. These four factors are: novelty and complexity, special skill and experience of counsel, quality of representation, and results obtained. *Blum*, 465 U.S. at 898–900, 104 S.Ct. 1541.

In this case, the *Johnson* factors which seem to support the award include: novelty and difficulty, skill required, risk of non-payment, experience of counsel, and similar awards. Thus, applying the ruling of *Blum*, it seems that the *Johnson* factors which do support the request are the risk of non-payment and similar awards.

However, it must be remembered that *Blum* and its limitations, were decided long before *Blanchard v. Bergeron*, which seems to relax *Blum's* strict standards. Further, the decision of the Court of Appeals for the Tenth Circuit acknowledged *Blanchard* and that other factors could be considered for additional compensation be-

yond the "lodestar" figure. *Homeward Bound, Inc.*, 963 F.2d at 1356. It is these other factors, in *addition* to the *Johnson* factors, that this court will consider in analyzing the movant's request.

The first additional factor is the "benefit to the estate". There is no doubt that the estate significantly benefited by the movant's performance. Indeed, without the movant's efforts, the estate likely would have had no assets for distribution to unsecured creditors. Thus, this factor weighs in support of the request.

The second additional factor is the "effect on the creditors". Here, the unsecured creditors will be paid 100 percent of their claims. The movant's achievements [32] resulted in a positive effect on the creditors. Without the movant's services the creditors would have received substantially less, or nothing. Thus, this factor weighs in support of the request. It is also worth mention that no party having a pecuniary interest in the case has objected to the requested fee.

Moreover, the Rules of Professional Conduct for the State of Oklahoma prohibit attorneys from charging unreasonable fees. Rule 1.5, Okla.Stat. tit. 5, Ch. 1, App. 3–A. Many of the factors to determine the reasonability of a fee in this rule are mirrored in the *Johnson* decision. Nothing in the circumstances of this case indicate that Rule 1.5 would be violated by the award of $20,000.

Thus, in this case, two *Johnson* factors and two additional factors support the award. This court stresses that it is not awarding the movant a bonus or an enhancement, but rather final compensation

---

**32.** *In re Blue Coal Corporation*, 206 B.R. 721, 723 (Bankr.M.D.Pa.1997), recognizes extraordinary effort on the part of the attorney as a separate factor to be considered in calculating fee enhancement. However, it seems that extraordinary effort is subsumed in these other factors of "Benefit to the Estate" and "Effect on the Creditors".

In this case, there is no doubt that the movant's efforts were extraordinary. Counsel

went to great lengths in tracking down the assets, which involved entities in another state and another country.

*In re Blue Coal Corporation* also recognizes risk of non-payment as a factor to be considered when evaluating fee enhancement. However, it seems that this consideration is part of the sixth *Johnson* factor which includes the risk of non-payment.

under an analysis of reasonableness. Indeed, the Bankruptcy Code, itself, stresses the *value* of the services rendered. 11 U.S.C. § 330(a)(3). There is no question that the value to the estate in bringing the involuntary petition and avoiding the lien was approximately $2,000,000. A fee of $35,000 is not unreasonable compensation for this result. Accordingly, the movant has met its burden of proof.

The movant has also requested compensation for its time and effort in relation to this motion. It has presented an itemized list of activities and time spent resulting in a request of $830. No objection has been raised to this amount and it is reasonable.

*CONCLUSION*

Accordingly, the motion is granted and Reynolds, Ridings, Vogt & Morgan is awarded an additional $20,830 as its final compensation for legal services rendered in connection with this case.